IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN ROE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-2497-B-BN |
| | § | |
| JOHNSON COUNTY, TEXAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

A plaintiff who identifies by the pseudonym John Roe, a former immigration and state-jail detainee, brings *pro se* claims, mostly for alleged civil rights violations, against various entities and individuals. *See* Dkt. No. 50 (first amend. compl.). His case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference from United States District Judge Jane J. Boyle [Dkt. No. 8].

Eight motions to dismiss Roe's amended claims under Federal Rule of Civil Procedure 12(b)(6) are now before the Court:

1.   Defendant Sheriff Parnell McNamara's motion to dismiss [Dkt. No. 61], to which Plaintiff responded, *see* Dkt. No. 117, and Defendant replied, *see* Dkt. No. 128;

2.   Defendant Randall Price's motion to dismiss [Dkt. No. 74], to which Plaintiff responded, *see* Dkt. No. 105, and Defendant replied, *see* Dkt. No. 129;

3.      The Johnson County Defendants' motion to dismiss [Dkt. No. 76] – filed
        by Defendants Johnson County, Texas, Sheriff Bob Alford, Sheriff Adam
        King, David Blakenship, Robert Mayfiled, Bill Moore, Stu Madison, and
        Jeffrey Acklen – to which Plaintiff responded, *see* Dkt. No. 108, and
        Defendants replied, *see* Dkt. No. 143;

4.      Defendant Robert Matson's motion to dismiss [Dkt. Nos. 77 & 78], to
        which Plaintiff responded, *see* Dkt. No. 114, and Defendant replied, *see*
        Dkt. No. 147;

5.      The LaSalle Defendants' motion to dismiss [Dkt. Nos. 79 & 89] – filed by
        Dependants Southwestern Correctional, LLC d/b/a LaSalle Corrections,
        LLC d/b/a LaSalle Southwest Corrections and LaSalle Management
        Company, LLC – to which Plaintiff responded, *see* Dkt. No. 117, and
        Defendants replied, *see* Dkt. No. 148;

6.      Defendant Phillip Roden's motion to dismiss (and motion to strike) [Dkt.
        No. 81], to which Plaintiff responded, *see* Dkt. No. 104, and Defendant
        replied, *see* Dkt. No. 130;

7.      Defendants Jacob Aguilar and Ivan Alvarado's motion to dismiss [Dkt.
        Nos. 96 & 97], to which Plaintiff responded, *see* Dkt. No. 120, and
        Defendants replied, *see* Dkt. No. 138 and

8.      Defendants Eddie Williams and Richard Alford's motion to dismiss [Dkt.
        Nos. 99 & 107], to which Plaintiff responded, *see* Dkt. No. 137, and
        Defendants replied, *see* Dkt. No. 151.

Many of the grounds for dismissal, most notably statute of limitations, overlap. This reason – and Plaintiff's casting his allegations under so many novel theories of liability but including so few specific facts (if any) to support each allegation – require the undersigned to generally address the motions together. Because the undersigned recommends leave to amend, this approach does not prejudice Plaintiff.

After considering the motions and the parties' extensive briefing, the undersigned enters these findings of fact, conclusions of law, and recommendation that, to the extent and for the reasons explained below, the Court should grant the eight motions to dismiss without prejudice to Plaintiff's filing, within a reasonable time that the Court sets, one final amended complaint that cures all deficiencies noted below, but the Court should require Plaintiff to move for leave to continue to prosecute this action anonymously and should deny the pending motion to strike made under Federal Rule of Civil Procedure 12(f).

## Applicable Background

Further details of Plaintiff's allegations will be discussed below as necessary to address his claims. But, briefly, Plaintiff was taken into immigration custody and detained in Johnson County in November 2015. He suffered a seizure there that month and was transported to a local hospital.

At the hospital, he alleges that he was sexually assaulted by a guard assigned to him. He reported the assault when he returned to the detention center. He was examined, and his wife filed a civil rights complaint with the Department of Homeland Security ("DHS") related to the assault.

On December 1, 2015, he took a polygraph exam. The next day, he was arrested for making a false report to a peace officer and received related disciplinary sanctions. Also on that day, DHS agents interview him regarding his sexual assault outcry.

On either December 2 or December 3, he alleges that he was pepper-sprayed to force him out of his cell, after he refused to be taken to booking. He was then taken into segregation, where he alleges that he was prevented from contacting an attorney. And, after spending ten days in the criminal section of the jail, he posted bail and was transferred back to immigration detention.

On December 12, 2015, he was transferred to an immigration processing center in Pearsall, Texas, where he was detained for five weeks. He posted bail and was released from immigration custody on January 2, 2016. The state prosecution for making a false report nevertheless continued. And immigration authorities continued to investigate Plaintiff's sexual assault allegation.

On August 25, 2017, Plaintiff failed to appear for his trial on the state charge. On December 19, 2017, he was arrested, and an immigration detainer prevented his release from custody. After his return to custody, Plaintiff alleges that he was retaliated against, that his food was tampered with, and that he was pepper-sprayed a second time. He further alleges that, while he was in pretrial custody, the Johnson County Defendants and the LaSalle Defendants attempted to frame and entrap him.

In May 2018, he was found not guilty on the making-a-false-report offense. He was then taken back into immigration custody. And, on September 28, 2018, he received a response to his civil rights complaint – DHS's office of civil rights and civil

-4-

liberties "found concerns about [the Johnson County Sheriff's Office's] investigation and prosecution of you for making a false police report. Therefore, [the office] made a recommendation to ICE regarding decisions to prosecute sexual assault complainants."

## Anonymity

As a preliminary matter, the Court should consider Plaintiff's use of a pseudonym. He has proceeded under the pseudonym John Roe based on an assertion that, "as a survivor of sexual assault, he may elect to conceal his true identity." Dkt. No. 50 at 1 n.1 (citing TEX. CODE CRIM. PROC. art. 57.02). But he has voluntarily signed his actual name to pleadings and briefs multiple times. *See, e.g.*, *id.* at 202.

"Article 57.02 speaks to the use of a pseudonym to protect a victim's identity on documentation and in judicial proceedings and applies only after the victim completes a specified form and returns that form to law enforcement." *Cantu v. Rocha*, 77 F.3d 795, 808 (5th Cir. 1996); *cf. Johnson v. Sawyer*, 47 F.3d 716, 734 n.37 (5th Cir. 1995) ("We recognize that occasionally statutes provide for the use in certain criminal proceedings of a victim's pseudonym. *See, e.g.*, TEX. CODE CRIM. PROC. art. 57.02. We are aware, however, of no comparable statute, *state or federal*, authorizing a felony defendant's use of a pseudonym in the criminal proceedings against him." (emphasis in original)).

There is no evidence that Plaintiff has complied with the requirements of Article 57.02 or that Article 57.02 applies to this proceeding.

Even so, the United States Court of Appeals for the Fifth Circuit recently examined a district court's application of "three factors common to anonymous-party

suits that [the Court of Appeals has] said 'deserve considerable weight.'" *Doe v. McKesson*, 922 F.3d 604, 615 n.6 (5th Cir. 2019) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). "These are: (1) whether the plaintiff is 'challeng[ing] governmental activity'; (2) whether the plaintiff will be required to disclose information 'of the utmost intimacy'; and (3) whether the plaintiff will be 'compelled to admit [his] intention to engage in illegal conduct, thereby risking criminal prosecution.'" *Id.* (quoting *Stegall*, 653 F.2d at 185).

The plaintiff in *McKesson* moved the district court to allow him to proceed anonymously. And some factors may weigh in favor of allowing Plaintiff to do so as well. But, because Plaintiff failed to move the Court for leave to proceed anonymously initially, if the Court accepts these findings, conclusions, and recommendation – and if Plaintiff elects to file a second amended complaint to cure the deficiencies discussed herein – the Court should require that, when he files the amended complaint, he also file a separate motion for leave to continue to proceed anonymously that "demonstrates a privacy interest that outweighs the 'customary and constitutionally embedded presumption of openness in judicial proceedings.'" *Id.* (quoting *Stegall*, 653 F.2d at 186); *cf. Craig v. Harney*, 331 U.S. 367, 374 (1947) ("What transpires in the court room is public property.").

## Legal Standards

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). But a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic

recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project*, 920 F.2d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431

(7th Cir. 1993)).

While "the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted); *cf. Crisco v. Lockheed Martin Corp.*, No. 4:10-cv-418-A, 2010 WL 3119170, at *2 n.2 (N.D. Tex. Aug. 4, 2010) ("Rule 8 requires that a statement of the court's jurisdiction be included in a 'pleading,' and plaintiff's response to defendant's motion is not a pleading." (citation omitted)).

The undersigned therefore limits the analysis below to considering the allegations as made in Plaintiff's amended complaint [Dkt. No. 50].

**Discussion**

I.   <u>Shotgun Pleading</u>

In his amended complaint, Plaintiff pleads 70 separate claims. The first paragraph under each claim begins with some variation of "Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraph as if fully set forth herein." Claims presented in this "shotgun" manner lack substantive plausibility.

> As opposed to the "short and plan statement" requirement contemplated by Rule 8, shotgun pleadings contain several counts within a complaint with each count "incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions."

*Copeland v. Axion Mortg. Group LLC*, No. 1:16cv159-HSO-JCG, 2016 WL 4250431, at *4 (S.D. Miss. Aug. 11, 2016) (quoting *Griffin v. HSBC Mortg. Servs., Inc.*, No. 4:14cv132-DMB-JMV, 2015 WL 4041657, at *5 (N.D. Miss. July 1, 2015) (quoting, in turn, *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)); internal quotation marks omitted).

Shotgun pleadings are subject to dismissal under Rule 12(b)(6), *see id.*, particularly where – as shown by the multiplicity of claims here – "the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick," *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986). Asserting claims in this manner – that is, "by merely attaching a label and/or legal conclusion to no facts unique to that claim or, at best, threadbare unique facts – is not sufficient to state a claim that is plausible on its face." *Lowe v. Dallas Police Dep't*, No. 3:17-cv-704-G-BN, 2017 WL 4863076, at *9 (N.D. Tex. Oct. 17, 2017),

*rec. adopted*, 2017 WL 4838980 (N.D. Tex. Oct. 26, 2017).

While Plaintiff's amended complaint does contain factual material, most claims as currently pled "lack sufficient facts to support an inference that [the] defendant[(s)] is responsible for [that] particular harm to [Plaintiff] – therefore there is no 'more than the mere possibility of misconduct,' which, of course, is not enough to state a plausible claim." *Id.* (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins*, 519 F.3d at 1247 ("The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." (quoting *Twombly*, 550 U.S. at 556))).

This pleading deficiency is reason enough to grant all eight Rule 12(b)(6) motions to dismiss. But additional – more specific – reasons discussed below also require that the Court grant the motions to dismiss.

II.   <u>Limitations</u>

   **A.   Legal Standards**

Multiple defendants move to dismiss Plaintiff's claims accruing prior to September 19, 2016, two years prior to the date that he filed this action. *See* Dkt. No. 4; *see also* Dkt. Nos. 76 (Johnson County Defendants); Dkt. Nos. 77 & 78 (Matson); Dkt. Nos. 79 & 88 (LaSalle Defendants); Dkt. No. 81 (Roden); Dkt. Nos. 96 & 97 (Aguilar and Alvarado); Dkt. Nos. 99 & 107 (Williams); *cf. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."

(quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003))).

Plaintiff primarily asserts civil rights claims against government actors under 42 U.S.C. §§ 1983 and 1985 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* Dkt. No. 50 at 51-169, 192-200. Regardless whether these claims are asserted against state or federal actors, "[b]ecause there is no federal statute of limitations for § 1983 and *Bivens* claims, federal courts apply the general personal injury limitations period and tolling provisions of the forum state," *Starks v. Hollier*, 295 F. App'x 664, 665 (5th Cir. 2008) (per curiam) (citing *Brown v. Nationsbank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993)).

As such, there claims are governed by Texas's two-year, personal-injury limitations statute. *See, e.g.*, *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987) ("Civil rights actions brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1988 are deemed analogous to Texas tort actions, and therefore, the applicable limitations period is ... two years." (citations omitted)); *Shelby v. City of El Paso, Tex.*, 577 F. App'x 327, 331 (5th Cir. 2014) (per curiam) ("[O]ur cases have consistently held that '[t]he statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state.'" (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)).

Texas's two-year statute of limitations for personal injury actions, *see* TEX. CIV. PRAC. & REM. CODE § 16.003, also applies to Plaintiff's various state law tort claims, *see* Dkt. No. 50 at 170-92. But, to the extent that Plaintiff alleges state law claims

based on "any injury that 'arises as a result' of sexual assault," it appears that Texas's "five-year statute of limitations applies." *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 624 (W.D. Tex. 2017) (quoting Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 16.0045(b))[1]; *but see King-White*, 803 F.3d at 759-61 (finding Section 16.0045(b) not applicable to federal civil rights claims based on an alleged sexual assault).

As to the civil rights claims, while the applicable two-year limitations period is borrowed from Texas law, courts "determine the accrual date of [these claims] by reference to federal law." *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

"Federal law holds generally that an action accrues when a plaintiff has a complete and present cause of action, or, expressed differently, when the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997); internal quotation marks omitted). Put another way, "the limitations period begins to run 'the moment the

---

[1] *See also Stephanie M. v. Coptic Orthodox Patriarchate Diocese of S. U.S.*, 362 S.W.3d 656, 660 (Tex. App. – Houston [14th Dist.] 2011, pet. denied) ("[S]ection 16.0045(a) applies to a 'suit for personal injury,' which includes claims for negligence. There is no language restricting this particular limitations statute to certain types of personal-injury claims; hence, there is nothing in the statute to indicate that the legislature intended to limit this provision to causes of action against only the perpetrators of sexual assault. ... Taken together, the provisions of section 16.0045 unambiguously show a legislative intent to provide victims of sexual assault, aggravated sexual assault, and continuous sexual abuse of young children more time to seek damages for their injuries."); *cf. C.R. v. Am. Inst. Foreign Study, Inc.*, No. SA-12-CA-1046, 2013 WL 5157699, at *8 (W.D. Tex. Sept. 12, 2013) (finding Section 16.0045 applicable "to claims for medical expenses asserted by the parents of the victim").

plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 576); *see also Shelby*, 577 F. App'x at 331-32 ("The standard in § 1983 actions provides 'that the time for accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" (quoting *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989))).

Accrual of Plaintiff's state law claims, similarly, are measured under "the legal injury rule applies, under which 'a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur.'" *Suter v. Univ. of Tex. at San Antonio*, 495 F. App'x 506, 509 (5th Cir. 2012) (per curiam) (quoting *Childs v. Haussecker*, 974 S.W.2d 31, 36-37 (Tex. 1998); citing *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997)); *see also Williams v. Kroger Tex., L.P.*, No. 3:16-cv-1631-L, 2016 WL 5870976, at *3 n.1 (N.D. Tex. Oct. 16, 2016) ("The statute of limitations for a personal injury cause of action under Texas law begins to run from the date a wrongful act causes an injury." (citing *Childs*, 974 S.W.2d at 36)).

And, because Texas's statute of limitations is borrowed in civil rights cases filed in federal court, "Texas's equitable tolling principles control this litigation." *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (per curiam) (citing *Rotella v. Pederson*,144 F.3d 892, 897 (5th Cir. 1998)); *see also Gartrell*, 981 F.2d at 257 ("In applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions."); *FDIC v. Dawson*, 4 F.3d 1303, 1309 (5th Cir. 1993) ("[W]hen state statutes of limitation are borrowed, state tolling principles are to be the

'primary guide' of the federal court. [And t]he federal court may disregard the state tolling rule only if it is inconsistent with federal policy." (citations omitted)).

"Texas courts sparingly apply equitable tolling and look, *inter alia*, to whether a plaintiff diligently pursued his rights; litigants may not use the doctrine to avoid the consequences of their own negligence. Federal courts also apply the doctrine sparingly." *Myers*, 464 F. App'x at 349 (citations and internal quotation marks omitted); *compare, e.g., Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App. – Dallas 2005) ("Equitable tolling applies in situations where a claimant actively pursued his judicial remedies but filed a defective pleading during the statutory period, or where a complainant was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass." (citations omitted)), *with Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) ("[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010))).

So, whether under Texas law or under federal law, equitable tolling requires both diligence and "circumstances that caused a litigant's delay [that] are both extraordinary *and* beyond [his] control." *Menominee Indian Tribe*, 136 S. Ct. at 756 (emphasis in original); *see, e.g., Rafter v. Tex. Dep't of Crim. Justice*, Civ. A. No. H-11-0691, 2012 WL 3314905, at *7 (S.D. Tex. Aug. 13, 2012) ("Whether under federal or Texas law, equitable tolling is inappropriate where the plaintiff has failed to exercise diligence in preserving his or her legal rights."(citations omitted)); *Farmer v. D&O*

-15-

*Contractors*, 640 F. App'x 302, 307 (5th Cir. 2016) (per curiam) (holding that because "the FBI did not actually prevent Farmer or any other Plaintiff from filing suit" but instead "advised Farmer that filing suit would have been against the FBI's interest" and "that the RICO claims could be filed after the investigation concluded," "[a]ny obstacle to suit was ... the product of Farmer's mistaken reliance on the FBI, and a party's mistaken belief is not an extraordinary circumstance" (citing *Menominee Indian Tribe*, 136 S. Ct. at 756-57)).

Texas's "equitable tolling principles" also include "tolling based on fraudulent concealment and the 'discovery rule.'" *King-White*, 803 F.3d at 764 (citing *Rotella*, 144 F.3d at 896-97); *see also Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015) ("We have recognized two doctrines that may delay accrual or toll limitations: (1) the discovery rule and (2) fraudulent concealment." (citing *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927, 929-30 (Tex. 2011)).

> "Fraudulent concealment tolls limitations until the claimant, using reasonable diligence, discovered or should have discovered the injury." *Thompson v. Deutsche Bank Nat'l Tr. Co.*, 775 F.3d 298, 307 (5th Cir. 2014) (quoting *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 676 (5th Cir. 2013)) (quotation marks omitted). The Fifth Circuit "applies a four-prong test for fraudulent concealment under Texas law, under which the plaintiff must demonstrate: '(1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception.'" *Id.* (quoting *Priester*, 708 F.3d at 676). "'The estoppel effect of fraudulent concealment ends,' however, 'when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action.'" *King-White*, 803 F.3d at 764 (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983)).

*Walker v. Stephens*, No. 7:17-cv-168-O-BP, 2018 WL 8490059, at *6 (N.D. Tex. June 21,

2018) (citation modified).

> Under Texas law, the "discovery rule" provides a "very limited exception to statutes of limitations." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996), *superseded by statute as stated in Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 3 (Tex. 1999). While accrual of a Texas personal injury action generally occurs when "a wrongful act causes an injury, regardless of when the plaintiff learns of that injury," the "judicially-crafted" discovery rule defers accrual of the cause of action if "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Childs*, 974 S.W.2d at 36-37 (Tex.1998) (citation and quotation marks omitted). In such a circumstance, the cause of action does not accrue until the plaintiff knows or reasonably should have known of the injury. *Id.* at 37.

*King-White*, 803 F.3d at 764 (citation modified).

The federal discovery rule, somewhat by contrast, is strictly "an accrual rule for the applicable statute of limitations – not a tolling rule – and simply defers the accrual of a cause of action." *Shelby*, 577 F. App'x at 331 (admonishing parties not to "confuse[] tolling and accrual rules for statute of limitations," given the distinction in which law – state or federal – governs, and then citing *Altai*, 918 S.W.2d at 455 ("The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence should have known of the facts giving rise to the cause of action.")).

"The federal standard used to determine the accrual of a section 1983 cause of action is that the cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Longoria v. City of Bay City, Tex.*, 779 F.2d 1136, 1138 (5th Cir. 1986) (citing *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980)); *accord Walker*, 550 F.3d at 414; *Shelby*, 577 F. App'x at 331-32; *see also*

*Kingham v. Pham*, 753 F. App'x 336, 337 (5th Cir. 2019) (per curiam) ("Under the federal 'discovery rule,' an action accrues when a plaintiff knows both the existence of an injury and the cause of the injury." (citing *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 190 (5th Cir. 2011))).

When a plaintiff in a civil rights actions knows or has reason to know of an injury and the cause of that injury – such as arrest by police officers that he believes to be wrongful or use of force by prison guards that he believes to be excessive – the limitations period begins, and he acquires a duty to fully investigate his claims. Simply because, for example, a plaintiff later learns – in pursuing his investigation, for example – that a particular defendant may be liable for his harm does not restart the limitations period. A decision by the Fifth Circuit demonstrates this principle:

> The fact that the Longorias took all of this action after the first flood and before the second clearly establishes that they knew of their injury, and were on notice of its cause, at the occurrence of the first flood.... [W]e reject the Longorias' argument here that the statutory period was tolled until they learned through a newspaper article of possible wrongdoing by this defendant. They were on ample notice after the first flood that it would be appropriate to investigate the possibility of fraud. At that point, the limitations period began to run and the Longorias acquired a duty to exercise reasonable diligence to discover their cause of action. The argument that the statutory period is tolled until the plaintiff learns that the defendant's conduct may have been wrongful finds no support in the relevant case law.

*Longoria*, 779 F.2d at 1139 (citing *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1366 (5th Cir. 1984))).

## B.   Analysis

Plaintiff's framing of the factual allegations in support of several claims prevents

a precise determination that a particular, numbered claim is time-barred. *See, e.g.*, Claims I; XI; XVIII; XXVII; XXXVII; XXXVIII; LXI. For purposes of limitations, then, Plaintiff's claims may be divided into three categories: (1) civil rights claims and state law claims based on events that occurred in November and December 2015 and prior to Plaintiff's release from immigration custody in January 2016 other than those state law claims based on injuries that arise as a result of an alleged sexual assault that occurred in November 2015; (2) state law claims based on injuries that arise as a result of the alleged sexual assault; and (3) all claims based on events that occurred once Plaintiff was rearrested in December 2017. Claims in the first category are time-barred, while claims in the second and third are not.

Plaintiff's claims accrued when he was injured – when he knew or should have known there was a basis for the claim. *See, e.g.*, *Rafter*, 2012 WL 3314905, at *7 ("Generally, under both federal and Texas law, a cause of action accrues when a plaintiff suffers an injury; the plaintiff cannot wait until she knows the full extent or the consequences of the injury before filing." (collecting cases)). No claim as alleged reflects that, as to that claim, Plaintiff was unaware of both an injury and, at a minimum, "circumstances [that] would lead a reasonable person to investigate further." *Piotrowski*, 237 F.3d at 576.

For example, as to his various claims based on sexual assault, Plaintiff reported the alleged sexual assault "to his wife with the instruction to contact Department of Homeland Security, Office of Inspector General (DHS-OIG) sexual assault hotline" two days after he claims it occurred. Dkt. No. 50, ¶ 51. Similarly, Plaintiff "submitted

several grievances regarding [conditions of confinement, which he contends] Defendants largely ignored," *id.*, ¶ 864, while his various claims based on false imprisonment accrued "when the alleged false imprisonment end[ed,]" *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (citation omitted); *see also Moon v. City of El Paso*, 906 F.3d 352, 358 (5th Cir. 2018) ("Making our best *Erie* guess, we believe the Supreme Court of Texas would side with the intermediate appellate courts and trusted treatises. False imprisonment is a continuing tort in Texas – the injury persists until the imprisonment ends.").

Plaintiff has responded to Defendants' limitations arguments by raising more than a dozen reasons why accrual of his claims should be delayed or limitations tolled, *see, e.g.*, Dkt. No. 137 at 26-74 – many of which conflict with the accrual rules as explained above and the limited universe of tolling doctrines set out above, *see, e.g.*, *Cotton v. Tex. Express Pipeline, LLC*, No. 6:16-CV-00453-RP-JCM, 2017 WL 3709093, at *4 (W.D. Tex. July 19, 2017) ("Under Texas law, there are only two recognized doctrines that may delay accrual or toll limitations: (1) the discovery rule; and (2) fraudulent concealment." (citing *Valdez*, 465 S.W.3d at 229)), *rec. adopted in applicable part*, 2018 WL 1419346 (W.D. Tex. Mar. 22, 2018).

But the factually-plausible allegations of his pleading – his amended complaint [Dkt. No. 50] – "fail to raise some basis for tolling or [delayed accrual]," *King-White*, 803 F.3d 754, 758, that is supported by the case law set out above, *see, e.g.*, *Moon*, 906 F.3d at 358-59 ("Moon alleges no facts sufficient to toll the pertinent limitations period. Nor does any equitable doctrine toll limitations here. State law generally governs

tolling. In Texas, two doctrines, neither applicable in this case, may toll limitations (or delay accrual): fraudulent concealment, or injuries that are both inherently undiscoverable and objectively verifiable. Our review of the record and the governing law leaves us unpersuaded that Moon has satisfied any applicable Texas tolling doctrine or articulated specific facts that warrant extending limitations." (footnotes omitted)).

For these reasons, the Court should dismiss with prejudice all civil rights claims and state law claims based on events that occurred in November and December 2015 and prior to Plaintiff's release from immigration custody in January 2016 other than those state law claims based on injuries that arise as a result of an alleged sexual assault that occurred in November 2015.

## II.   *Bivens*

As to the many civil rights claims made against two federal agents under *Bivens* – based on alleged false imprisonment; false arrest; First, Fourth, and Fifth Amendment violations; selective, malicious, and retaliatory prosecution; conspiracy; intentional infliction of emotional distress; and deprivation of familial companionship – *Bivens*, unlike Section 1983, is not a Congressional statute that "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) ("Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.").

The United States Supreme Court "has approved of an implied damages remedy under the Constitution itself" only three times – in *Bivens*, to enforce "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" in violation of the Fourth Amendment; in *Davis v. Passman*, 442 U.S. 228 (1979), holding "that the Fifth Amendment Due Process Clause gave [a Congressman's administrative assistant] a damages remedy for gender discrimination"; and in *Carlson v. Green*, 446 U.S. 14 (1980), holding "that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner] a damages remedy for failure to provide adequate medical treatment." *Abassi*, 137 S. Ct. at 1854-55.

In *Abbasi*, the Supreme Court further "stressed that any extension of *Bivens* to new factual scenarios is now a "'disfavored' judicial activity.'" *Maria S. ex rel. EHF v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) (quoting *Abassi*, 137 S. Ct. at 1857 (quoting, in turn, *Iqbal*, 556 U.S. at 675)). And so, "there is a two part inquiry for determining whether to allow a *Bivens* cause of action: (1) whether the instant case involves a 'new context' that is distinct from prior *Bivens* cases and (2) whether any 'special factors' preclude extending *Bivens* to this 'new context.'" *Id.* at 784 (quoting of *Hernandez v. Mesa*, 885 F.3d 811, 816-18 (5th Cir. 2018) (en banc)).[2]

_____

[2] *See also Begay v. Leap*, No. 3:17-cv-2639-N-BT, 2019 WL 1318410, at *2 (N.D. Tex. Feb. 26, 2019) ("Though expanding *Bivens* is now a disfavored judicial activity, the Supreme Court has not foreclosed the possibility. The Supreme Court held that in considering a request for a new *Bivens* remedy, it first looks to 'whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding

Plaintiff fails to substantively address Aguilar and Alvarado's arguments that *Bivens* fails to provide a remedy in the novel contexts Plaintiff asserts. *Compare* Dkt. No. 97, *with* Dkt. No. 120. His failure to do so weighs in favor of dismissal of the *Bivens* claims without prejudice to Plaintiff's reasserting those claims in an amended complaint to the extent that he can show that *Bivens* provides a remedy in each context alleged. *Cf. Begay*, 2019 WL 1318410, at *5 ("[B]ecause the Supreme Court has not determined that *Bivens* provides a remedy against federal officials for First Amendment violations, and the Supreme Court has cautioned against expanding *Bivens* in new contexts – particularly where, as here, special factors counsel hesitation and a plaintiff has alternative remedies – the Court should dismiss Plaintiff's First Amendment retaliation claim against Defendant."); *Canada v. U.S. I.R.S.*, No. 3:17-cv-2465-S-BN, 2018 WL 4732467, at *11-*19 (N.D. Tex. June 21, 2018), *rec. adopted*, 2018 WL 4725254 (N.D. Tex. Sept. 30, 2018).

Similarly, the Supreme Court has expanded the *Bivens* remedy to neither claims against private corporations, *see Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 64-

---

remedy in damages,' and second, even if there is no alternative, whether there are 'any special factors counselling hesitation before authorizing a new kind of federal litigation.' The Supreme Court has not defined 'special factors counselling hesitation,' but has noted that they encompass those things that cause a court to hesitate before determining that it 'is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.' Implying new causes of action under the Constitution implicates separation-of-powers concerns such that '[i]n most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability.'" (citations omitted)), *rec. accepted*, 2019 WL 1315901 (N.D. Tex. Mar. 22, 2019).

74 (2001), nor claims against employees of a private prison, *see Minneci v. Pollard*, 565 U.S. 118, 125-130 (2012), requiring dismiss of Plaintiff's *Bivens* claims against the LaSalle Defendants and Matson without prejudice to Plaintiff's showing, through an amended complaint, how *Bivens* provides a remedy in each context alleged.

III.   <u>Immunities</u>

Many of Plaintiff's claims are also barred (or potentially barred) by immunities to suit – some absolute and some qualified.

**A.   Judicial Immunity**

Plaintiff asserts claims against Robert Mayfield, Judge for Johnson County Court at Law Number 1.

Judges generally have absolute immunity for judicial actions taken within the scope of their jurisdiction, which also means that judicial officers are generally immune from suits for money damages. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam); *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221-22 (5th Cir. 2009). "Judicial immunity can be overcome only by showing that the actions complained of were nonjudicial in nature or by showing that the actions were taken in the complete absence of all jurisdiction." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). "A judge's acts are judicial in nature if they are normally performed by a judge and the parties affected dealt with the judge in his judicial capacity." *Id.* at 285 (internal quotation marks omitted). "[J]udicial immunity is not overcome by allegations of bad faith or malice," *Mireles*, 502 U.S. at 11; *see Boyd*, 31 F.3d at 284 ("The alleged magnitude of the judge's errors or the mendacity of his acts

-24-

is irrelevant." (citing *Young v. Biggers*, 938 F.2d 565, 569 n.5 (5th Cir. 1991))). And "[d]isagreeing with a judge's actions does not justify depriving that judge of his or her immunity," *Greenlee v. U.S. Dist. Court*, No. 09-2243-cv-FJG, 2009 WL 1424514, at *2 (D. Kan. May 21, 2009) (citing *Stump*, 435 U.S. at 363).

None of Plaintiff's factually-plausible allegations against Judge Mayfield reflect that he acted outside his judicial capacity, which requires dismissal of these claims with prejudice.

### B.   Prosecutorial Immunity

Plaintiff asserts claims against Johnson County Attorney Bill Moore and his assistant, Stu Madison.

State prosecutors are absolutely immune from a suit for damages for actions taken within the scope of their duties as prosecutors. *See Imbler v. Pachtman*, 424 U.S. 409, 420-24 (1976); *see also Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 634 n.2 (5th Cir. 2000) ("As to prosecutors, entitlement [to immunity] flows from performance of activities that are intimately associated with the judicial process, such as initiating and prosecuting a criminal case." (citing *Imbler*, 424 U.S. at 430)). A plaintiff "may overcome a defendant's prosecutorial immunity by alleging actions that fall outside 'initiating the prosecution and in carrying the case through the judicial process.'" *DeLeon v. City of Dallas*, No. 3:02-cv-1097-K, 2003 WL 22244773, at *1 (N.D. Tex. Sept. 16, 2003) (quoting *Boyd*, 31 F.3d at 285), *reversed in part on other grounds*, 141 F. App'x 258 (5th Cir. 2005).

Prosecutorial immunity, however, applies even if the prosecutor is

accused of knowingly using perjured testimony, withholding exculpatory evidence, and failing to make full disclosures of facts. State prosecutors are absolutely immune for their actions intimately associated with the judicial process, including their actions in seeking the issuance of an arrest warrant.

*Id.* (citations and quotation marks omitted); *see Bibb v. Montgomery Cnty. Sheriff*, Civ. A. No. H-13-3736, 2014 WL 3828232, at *8 (S.D. Tex. July 30, 2014) ("[A] prosecutor is entitled to absolute immunity for his action in commencing a prosecution and all actions during the course and scope of the prosecution, even against charges that he acted 'maliciously, wantonly, or negligently.'" (quoting *Imbler*, 424 U.S. at 430-31)).

Because Plaintiff alleges no specific facts to show that either Johnson County prosecutor acted outside of the scope of his prosecutorial duties, he has not overcome the absolute immunity that attaches to prosecutors acting within their jurisdiction. And his claims against these defendants should be dismissed with prejudice.

## C.   Sovereign Immunity

"Municipal governments are immune from tort suits except to the extent that immunity has been waived by the Texas Tort Claims Act ('TTCA')." *Hatcher v. City of Grand Prairie*, No. 3:14-cv-432-M, 2014 WL 3893907, at *7 (N.D. Tex. Aug. 6, 2014) (citations omitted). The TTCA "waives the state's immunity from suit in certain circumstances"; "covers all tort theories that may be alleged against a governmental entity whether or not it waives that immunity"; and provides that, "'[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.'" *Gil Ramirez Group L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d

400, 415 (5th Cir. 2015) (quoting TEX. CIV. PRAC. & REM. CODE § 101.106(e); citation omitted).

"Although the TTCA waives immunity in certain limited circumstances, the waiver does not extend to claims 'arising out of assault, battery, false imprisonment, or any other intentional tort.'" *Hatcher*, 2014 WL 3893907, at *7 (citing TEX. CIV. PRAC. & REM. CODE § 101.021; then quoting TEX. CIV. PRAC. & REM. CODE § 101.057(2)). To circumvent this non-waiver for intentional torts, Plaintiff attempts to wedge two claims under Section 101.021(2) – which makes a state governmental unit liable "for personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law" – one based on Roden's alleged use of a gun to sexual assault Plaintiff and a second based on Blakenship's alleged misuse of his badge, for failing to ensure that appropriate procedures were followed after Plaintiff reported the sexual assault.

Neither claim fits under Section 101.021(2). First, Plaintiff fails to plausibly allege that Roden was employed by Johnson County or that a county-issued gun was somehow defective. *See, e.g., Forgan v. Howard Cnty., Tex.*, 494 F.3d 518, 521 (5th Cir. 2007) ("The best reading of the Texas Supreme Court cases is that a waiver occurs if death or injury results from (1) the direct use of property by a state actor, or (2) a defective condition of state-issued property, even if actively employed by a third-party at the time of injury."). More broadly, "[e]ven where a plaintiff labels his claim as 'negligence,' that claim will still be barred if the label is merely a fiction or arises out

of an intentional tort." *Cox v. City of Ft. Worth, Tex.*, 762 F. Supp. 2d 926, 935 (N.D. Tex. 2010); *see also Holland v. City of Houston*, 41 F. Supp. 2d 678, 713 (S.D. Tex. 1999) ("Where the essence of a claim under the TTCA arises from an intentional tort, allegations of negligence are insufficient to avoid the § 101.057 exception to liability.").

Further, "if a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 462-63 (5th Cir. 2010) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658 (Tex. 2008)); *see also Quinn v. Guerrero*, 863 F.3d 353, 362 (5th Cir. 2017). Under this authority, Johnson County moves to dismiss Plaintiff's state law claims against Alford, Blakenship, Moore, Madison, and Acklen. And those claims should be dismissed with prejudice. *See, e.g.*, *Kelley v. City of Dallas*, No. 3:17-cv-1015-B-BK, 2017 WL 3891680, at *7 (N.D. Tex. Aug. 17, 2017) ("In the present case, Plaintiffs chose to file state law tort claims against both the City and the Individual Defendants arising out of the same subject matter. As such, the Individual Defendants are entitled to immediate dismissal of the claims against them with prejudice." (citations omitted)), *rec. accepted*, 2017 WL 3868257 (N.D. Tex. Sept. 5, 2017).

### D.    Qualified Immunity

Multiple defendants move for dismissal under Rule 12(b)(6) based on qualified immunity. "When a defendant asserts qualified immunity, the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity." *Shaw v. Villanueva*, 918 F.3d 414, 416-17 (5th Cir. 2019) (citing *Zapata v. Melson*, 750 F.3d

481, 485 (5th Cir. 2014); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)); *see also McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2018) ("When the motion to dismiss raises the defense of qualified immunity, the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm ... alleged and that defeat a qualified immunity defense with equal specificity.'" (quoting *Zapata*, 750 F.3d at 485 (quoting, in turn, *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)))).

To overcome immunity, "[t]he plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Shaw*, 918 F.3d at 417 (quoting *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)).[3]

All discovery is typically stayed pending a ruling on a defendant's entitlement to the defense of qualified immunity. *See Wicks v. Miss. State Employment Servs., Inc.*, 41 F.3d 991, 994-95 (5th Cir. 1995); *accord Foreman v. Texas A&M Univ. Sys. Health Sci. Ctr.*, No. 3:08-cv-1469-L, 2008 WL 494267, at *4 (N.D. Tex. Nov. 12, 2008) (citing *Wicks* in ruling that discovery is stayed pending a ruling on an individual defendant's

---

[3] *See also Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) ("Once an officer invokes the defense, the plaintiff must rebut it by establishing (1) that the officer violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)); *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) ("Once the defendant raises the qualified immunity defense, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008))).

dispositive motion); *see also Zapata*, 750 F.3d 481*; Backe*, 691 F.3d 645; *Lion Boulos v. Wilson*, 834 F.2d 504 (5th Cir. 1987); *Webb v. Livingston*, 618 F. App'x 201 (5th Cir. 2015) (per curiam).

But, where a defendant has asserted a qualified immunity defense, the Court may, under certain circumstances, permit limited discovery that is narrowly tailored to uncover facts that the Court needs to rule on that defense. *See Wicks*, 41 F.3d at 994; *Backe*, 691 F.3d at 648 ("[T]his court has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense."); *see also Burkett v. Kenner Police Dep't*, No. Civ. A. 02-1858, 2003 WL 1340294, at *1 (E.D. La. Mar. 17, 2003) (allowing the exchange of initial disclosures targeted at identifying officers involved in incident at issue after finding that plaintiff's Rule 7(a) reply met the heightened pleading requirement).

Primarily for this reason, where the undersigned is the presiding judge or where a case is referred to the undersigned for pretrial management, like here, the Court's preferred method for addressing qualified immunity is by requiring a defendant to file a motion for summary judgment on the defense and then – before taking the motion under submission – allowing the plaintiff an opportunity to move for leave to conduct limited discovery that is narrowly tailored to uncover facts that the Court needs to rule on the defense.

Therefore, to the extent that Plaintiff elects to file a second amended complaint and a defendant responds to that complaint – initially – through motion for summary

judgment raising qualifying immunity or – eventually, if necessary – through an answer raising qualified immunity as an affirmative defense, the Court will assess a defendant's entitlement to qualified immunity.

But, for now, the Court should decline to consider qualified immunity as a basis to dismiss Plaintiff's allegations.

IV.   Other Specific Pleading Deficiencies

Because the undersigned recommends allowing Plaintiff leave to amend his claims, the Court should place him on notice as to other pleading deficiencies that, if repeated in a second amended complaint, will require dismissal with prejudice. This list is not exhaustive, as many causes of action that Plaintiff asserts simply fail to meet Rule 8's factual plausibility requirements. If those claims are repled without specific facts to support Plaintiff's legal conclusions, they too are subject to dismissal with prejudice – for the reasons previously explained and for the reasons explained in the defendants' briefing.

A.   **Official Capacity Claims**

To the extent that Plaintiff asserts official capacity claims against McLennan County Sheriff Parnell McNamara – or any other defendant plausibly classified as a government agent – "[a]n official-capacity lawsuit is 'only another way of pleading an action against an entity of which an officer is an agent.'" *Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). When an individual is sued is his official capacity, liability is imposed "on the entity that he represents provided, of course, the public entity received notice and an

opportunity to respond." *Id.* (quoting *Brandon v. Holt*, 469 U.S. 464, 471-72, (1985)); *see also Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

Thus, where a plaintiff brings claims against both a public official, such as a law enforcement officer, in his official capacity and the public entity for which he works, the claims "essentially merge." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). The Court may then dismiss the claims against the public official as duplicative. *See Flores v. Cameron Cnty.*, 92 F.3d 258, 261 (5th Cir. 1996) (where the district court had dismissed claims against county commissioners in their official capacities "because those claims were duplicative of the claims against the County"); *see also Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 832 (S.D. Tex. 2011) ("The Fifth Circuit has held that it is appropriate to dismiss claims against officers in their official capacities when the 'allegations duplicate claims against the respective governmental entities themselves.'" (quoting *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001))).

### B.     Non-Jural Entity

In addition to duplicative official capacity claims, to the extent that Plaintiff has sued the Johnson County Sheriff's Department, claims against that department (or any other non-jural entity) should be dismissed with prejudice. A plaintiff may not bring a civil action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena*

*Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313. Relying on *Darby*, another judge of this Court has held, for example, that "the Dallas County Sheriff's Office," as well as the Dallas County jail, "are non-jural entities under § 1983." *Rambo v. Valdez*, No. 3:16-cv-02-O, 2016 WL 4398969, at *2 (N.D. Tex. May 6, 2016) (collecting cases).

### C.   Municipal Liability

To the extent that Plaintiff assets claims against Johnson County and policymaker-based claims against Sheriff McNamara and Johnson County Sheriffs Bob Alford and Adam King, "[a] municipality and/or its policymakers may be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted). That is, "[t]here is no vicarious municipal liability under § 1983; rather, plaintiffs 'must prove that "action pursuant to official municipal policy" caused their injury.'" *Three Legged Monkey, L.P. v. City of El Paso, Tex.*, 652 F. App'x 236, 239 (5th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting, in turn, *Monell*, 436 U.S. at 691)).

And, while the LaSalle entities may not be liable under *Bivens*, to the extent that Section 1983 may fit Plaintiff's claims against the LaSalle Defendants, "the

operation of a prison is a fundamental government function." *Olivas v. Corrs. Corp. of Am.*, 408 F. Supp. 2d 251, 254 (N.D. Tex. 2006) (citing *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) ("We agree with the Sixth Circuit and with those district courts that have found that private prison-management corporations and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury.")), *aff'd*, 215 F. App'x 332 (5th Cir. 2007) (per curiam). And "[t]he standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function." *Id.* at 254-55 (citing *Eldridge v. CCA Dawson State Jail*, No.3:04-CV-1312-M, 2004 WL 1873035, at *2 (N.D. Tex. Aug. 19, 2004), *rec. accepted*, 2004 WL 2075423 (N.D. Tex. Sept. 16, 2004)); *see also Olivas*, 215 F. App'x at 333 ("Contrary to Olivas's argument, CCA may not be held liable on a theory of respondeat superior." (citing *Monell*, 436 U.S. at 691)); *J.M. v. Mgmt. & Training Corp.*, No. 3:15CV841-HSO-JCG, 2017 WL 3906774, at *7 (S.D. Miss. Sept. 5, 2017) ("The parties do not dispute that MTC, even though it is a private prison-management company, is treated as a municipality for purposes of Plaintiff's § 1983 claims." (citations omitted)).

To assert liability under *Monell*, a plaintiff must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

"Official policy can arise in various forms. It usually exists in the form of written

-34-

policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579 (quoting, in turn, *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted); *see also Pinedo v. City of Dallas, Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" (quoting *Piotrowski*, 237 F.3d at 582)).

"Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Pinedo*, 2015 WL 5021393, at *9 (citations omitted); *but cf. Anderson v. Marshall Cnty., Miss.*, 637 F. App'x 127, 134 (5th Cir. 2016) (per curiam) ("Even within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish." (citing *Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."))).

"To plead a plausible claim, [Plaintiff] must allege facts that enable the court to draw the reasonable inference that '(1) the training procedures were inadequate; (2)

the city's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [his] injury.'" *Pinedo*, 2015 WL 5021393, at *9 (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011)); *accord Peña*, 879 F.3d at 623 (A "failure-to-train theory requires a plaintiff to prove that '1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.'" (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001))).

Further, to the extent that Plaintiff also employs a ratification theory of municipal liability, the Fifth Circuit has held that, "if the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final," *Peterson*, 588 F.3d at 849 (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

But the Fifth Circuit "has limited the theory of ratification to 'extreme factual situations,'" *id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)), such as officers' killing of the innocent occupant of a truck or their shooting of a fleeing suspect in the back, *see id.* (citations omitted)); *accord Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017) ("Ratification ... is limited to 'extreme factual situations.'" (quoting *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (quoting, in turn, *Peterson*, 588 F.3d at 848))); *see also Davidson*, 848 F.3d at 395-96 ("Here, the underlying conduct by Officers Flagg and

Jones, while unconstitutional, was not sufficiently extreme to qualify for a finding of ratification." (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985))).

The Fifth Circuit has "also explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 849 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)); *accord Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010); *Davidson*, 848 F.3d at 395; *see, e.g.*, *Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) (per curiam) ("The only evidence of ratification Medina identifies is that Ortiz accepted the officer's use of force report, refused to turn over evidence until the lawsuit was filed, and defends the deputies' actions in this case. None of these allegations show that Ortiz approved of the use of excessive force or the denial of medical care." (citation omitted)).

The operative complaint currently lacks "minimal factual allegations" that ultimately could support any theory of *Monell* liability. *E.G. by Gonzalez v. Bond*, No. 1:16-cv-68-BL, 2017 WL 3493124, at *6 (N.D. Tex. June 29, 2017) ("Despite the various arguments made by the City, the Court should find that Plaintiffs have made factual allegations in their second amended complaint to state plausible claims based upon failures to train, supervise, and discipline. Plaintiffs have identified training, supervision, and discipline procedures that are inadequate. They have also alleged that the City was deliberately indifferent in adopting the identified policies and that the inadequate policies directly caused their injuries. They have alleged sufficient facts to support these allegations and do not merely rely on conclusions and labels. When

considering a motion to dismiss, minimal factual allegations are sufficient to assert a municipal liability claim." (citing *Harvey v. Montgomery Cnty.*, 881 F. Supp. 2d 785, 797 (S.D. Tex. 2012))), *rec. adopted*, 2017 WL 3491853 (N.D. Tex. Aug. 14, 2017).

And, "[t]hough [Plaintiff] need not offer proof of [his] allegations at this stage, [he] still must plead facts that plausibly support each element of § 1983 municipal liability under [each] theory." *Peña*, 879 F.3d at 621 (citing *Iqbal*, 556 U.S. at 678). The municipal liability claims, as currently pled, therefore fail under Rule 12(b)(6).

### D. State Actor

To the extent that Plaintiff asserts claims against the psychologist appointed to determine whether he was competent to stand trial,

> "[p]rivate individuals generally are not considered to act under color of law," *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005), but "private action may be deemed state action when the defendant's conduct is 'fairly attributable to the State,'" *Priester v. Lowndes County*, 354 F.3d 414, 423 (5th Cir. 2004) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999)).

*Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017).

Plaintiff fails to plausibly allege that the court-appointed psychologist's conduct is fairly attributable to the state. And, where courts have examined this issue, the weight of authority seems to hold "that a court appointment of a private individual is not sufficient to establish state action." *Duboys ex rel. Duboys v. Bomba*, 199 F. Supp. 2d 166, 170 (S.D.N.Y. 2002) (collecting cases).

Further, alleging a plausible conspiracy based on 42 U.S.C. § 1985(3) – and Plaintiff asserts more than one – requires state action. *See United Bhd. of Carpenters*

& *Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 830 (1983) ("[A]n alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state.").

### E.   Conditions of Confinement

"[S]ince pretrial detainees and convicted state prisoners are similarly restricted in their ability to fend for themselves, the State owes a duty to both groups that effectively confers upon them a set of constitutional rights that fall under the Court's rubric of 'basic human needs.'" *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). A pretrial detainee's basic human needs are "protected by the Due Process Clause of the Fourteenth Amendment." *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (citing *Cupit v. Jones*, 835 F.2d 82, 84-85 (5th Cir. 1987)), which affords him "protections [that are] 'at least as great as ... those available to a convicted prisoner,'" *Price v. Valdez*, No. 3:16-cv-3237-D, 2017 WL 3189706, at *5 (N.D. Tex. July 27, 2017) (quoting *Hare*, 74 F.3d at 639; original brackets omitted). And "[a]n immigration detainee is entitled to the same rights afforded to a pretrial detainee." *Cruz-Hernandez v. Johnson Cnty. Det. Ctr.*, No. 3:16-cv-220-M-BH, 2017 WL 927825, at *6 n.9 (N.D. Tex. Jan. 6, 2017) (citing *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000)).

"Constitutional challenges by pretrial [or immigration] detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir.

2009) (quoting *Hare*, 74 F.3d at 644-45). "At the outset, the Court must determine whether a plaintiff alleging [such] violations ... is challenging a condition of confinement or an 'episodic act or omission.'" *Campos v. Webb Cnty. Sheriff's Dep't*, No. 5:12-CV-7, 2014 WL 1379668, at *5 (S.D. Tex. Apr. 3, 2014) (citation omitted).

> If the plaintiff has properly stated a claim as an attack on conditions of confinement, he is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish because, ... intent may be inferred from the decision to expose a detainee to an unconstitutional condition. A condition is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, etc. In some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice."

*Shepherd*, 591 F.3d at 452 (citing *Scott*, 114 F.3d at 53 n.2, and then quoting *Hare*, 74 F.3d at 645).

But Plaintiff still must, at a minimum, allege facts – not conclusions – from which it may be inferred that the conditions of confinement on which he bases these claims stem from any policy, explicit or otherwise. *Cf. id.* ("More often, ... a plaintiff's claim, properly characterized, faults specific jail officials for their acts or omissions because the plaintiff cannot establish the existence of an officially sanctioned unlawful condition."). And, to the extent that Plaintiff's claims are not based on a policy but on misconduct by officials, he must allege – or allege facts from which it may be inferred – that those officials "acted or failed to act with deliberate indifference to [his] needs." *Hare*, 74 F.3d at 648.

Further, several of Plaintiff's claims – notably, related to food or recreation –

-40-

appear to fail as a matter of law because they do "not surmount the *de minimus* hurdle of [the 42 U.S.C.] § 1997e(e) physical injury requirement." *Hardemon v. Sims*, No. 3:06-cv-297-K, 2006 WL 2668871, at *2 (N.D. Tex. Sept. 13, 2006) (citing *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 631 (5th Cir. 2003); *Siglar v. Hightower*, 112 F.3d 191, 193-194 (5th Cir. 1997)); *see, e.g.*, *Mahmoud v. Bowie*, 234 F.3d 29 (table), 2000 WL 1568178, at *2 (5th Cir. Sept. 14, 2000) (per curiam) ("Mahmoud asserts that the jail does not have adequate fire protection; that the shower and toilet area were unsanitary; that the jail does not provide for adequate physical exercise or mental stimulation; that he was not clothed properly; that he was not issued nail clippers and Q-tips; and that the food was unappetizing. All of these claims are either conclusional or *de minimis* and do not rise to the level of constitutional violations.").

## F. Deliberate Indifference

Relatedly, Plaintiff presents several medical-based claims that, as currently alleged, are all conclusional and/or state no more than claims for medical negligence.

To state a constitutional claim, Plaintiff must allege facts showing – or from which the Court may reasonably infer – that officials acted with deliberate indifference such as to cause the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). This is an "extremely high standard to meet," *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see, e.g.*, *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), and applies equally to prisoners and detainees, *see Thomas v. Mills*, 614 F. App'x 777, 778 (5th Cir. 2015) (per curiam)

(citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc)).

"Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018) (en banc) (quoting *James*, 577 F.3d at 617-18 (quoting, in turn, *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992))). "[T]he 'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Domino*, 239 F.3d at 756 (quoting *Farmer*, 511 U.S. at 838). And a disagreement with medical treatment, or a failure to provide additional medical treatment, alone, does not constitute deliberate indifference. *See id.*; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *see also Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (to establish a constitutional violation, a plaintiff must show that medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs").

## G.   Law Library Access

Analyzing Plaintiff's law-library-access claim as more broadly asserting that he was denied access to the courts, detainees and "[p]risoners have a constitutional right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel. ... [But,] before a [detainee or] prisoner may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate 'that his position as a litigant was prejudiced by his denial of access to the

courts.'" *McDonald v. Steward*, 132 F.3d 225, 230-31 (5th Cir. 1998) (citations omitted); *see also Wells v. Thaler*, 460 F. App'x 303, 308 (5th Cir. 2012) (per curiam) (An access-to-courts claim is "not cognizable unless the inmate's position as a litigant was actually prejudiced by the denial of access. To prove an 'actual injury,' an inmate must prove that his ability to pursue a claim was hindered or barred by the defendant's actions." (citations omitted)). To allege an access-to-courts claim that is "more than mere hope," it must "be pled in a manner that satisfies Fed. R. Civ. P. 8(a)." *Monroe v. Beard*, 536 F.3d 198, 206 n.6 (3d Cir. 2008) (citing *Christopher v. Harbury*, 536 U.S. 403, 416-18 (2002)). Plaintiff's allegations do not satisfy that rule.

### H.   Equal Protection

The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws," U.S. CONST. amend. XIV, § 1, which "is essentially a direction that all persons similarly situated should be treated alike," *Club Retro*, 568 F.3d at 212 (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)); *see also Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) ("The Equal Protection Clause directs that persons similarly situated should be treated alike." (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982))).

To state an equal protection claim, a plaintiff typically alleges that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Retro*, 568 F.3d at 212 (internal quotation marks omitted). Thus, no equal protection violation is alleged where a plaintiff "fails to allege any facts showing that [others were] similarly

situated." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015) (citing *Club Retro*, 568 F.3d at 213). And, even where a plaintiff alleges an equal protection violation "on behalf of a 'class of one'" – by alleging "that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" – he still must make more than "conclusional allegations that others similarly situated have been [treated better, by offering] specific factual support for his assertions." *Kyles v. Garrett*, 222 F. App'x 427, 429 (5th Cir. 2007) (per curiam) (citations omitted).

Currently pled, Plaintiff's equal protection claim(s) lack facts specific to show that others similarly situated were treated more favorably than Plaintiff and thus plausibly allege a violation.

## I.   Malicious Prosecution, Criminal Statutes, Falsified Report, and PREA

To the extent that Plaintiff alleges a Section 1983 claim based on "malicious prosecution," "no ... freestanding constitutional right to be free from malicious prosecution exists." *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc). "Therefore, under *Castellano*, 'the claimant must allege that officials violated specific constitutional rights in connection with a malicious prosecution.'" *Whittington v. Maxwell*, 455 F. App'x 450, 457 (5th Cir. 2011) (quoting *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010); citing *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) ("[I]t must be shown that the officials violated specific constitutional rights in connection with a 'malicious prosecution.'")).

-44-

Similarly, to the extent that Plaintiff asserts civil liability based on criminal statutes, those claims fail, because he "has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute." *Savannah v. United States*, No. 3:07-cv-2052-O, 2009 WL 1181066, at *2 (N.D. Tex. Apr. 30, 2009) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979)).

Somewhat related, Plaintiff may not state a claim for violation of due process based on the alleged falsification of a report alone. *See, e.g.*, *Barber v. Quarterman*, 437 F. App'x 302, 304 (5th Cir. 2011) (per curiam) ("Barber asserts that officials falsified a report in violation of his right to due process and that others conspired with them to falsify the report. These allegations, however, do not state a claim under § 1983 because Barber has identified no constitutional violation.").

And, because the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 *et seq.*, "does not create or provide a private cause of action, [Plaintiff's] claims for relief ... under the provisions of the PREA must be dismissed ... for failure to state a claim upon which relief may be granted." *Molina v. Wise Cnty., Tex.*, No. 4:17-cv-809-Y, 2019 WL 2176272, at *2 (N.D. Tex. May 20, 2019); *see also Krieg v. Steele*, 599 F. App'x 231, 232-33 (5th Cir. 2015) (per curiam) ("Insofar as Krieg argues that his rights under the [PREA] were violated, other courts addressing this issue have found that the PREA does not establish a private cause of action for allegations of prison rape. Krieg has cited no case in support of his position; therefore, any claim raised under the PREA is properly dismissed as frivolous." (collecting cases)).

J.     **Declaratory and Injunctive Relief**

To the extent that Plaintiff seeks prospective declaratory or injunctive relief based on conditions of his confinement, his release from that confinement likely moots such claims. *Cf. Coleman v. Lincoln Parish Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017) (per curiam) ("By the time Coleman filed his original complaint, he had been transferred from the Lincoln Parish Detention Center ... to the Jefferson Parish Detention Center. That transfer mooted his claims for declaratory and injunctive relief under the Religious Land Use and Institutionalized Persons Act ... , and the possibility of his transfer back to the LPDC is too speculative to warrant relief." (citing *Cooper v. Sheriff, Lubbock Cnty.*, 929 F.2d 1078, 1084 (5th Cir. 1991); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001))). The same holds true to the extent that Plaintiff seeks prospective relief related to, for example, allegedly excessive bail claim. *See, e.g.*, *Hernandez v. Carbone*, 567 F. Supp. 2d 320, 331 (D. Conn. 2008) (former detainee's claim for injunctive relief in Section 1983 action alleging excessive bail was moot where state charges were dropped and prisoner was no longer being held in pre-trial detention).

V.     Motion to Strike

Finally, Defendant Roden moves, under Federal Rule of Civil Procedure 12(f), to strike portions of the complaint and amended complaint he contends are immaterial and scandalous. *See* Dkt. No. 81 at 6-8; *see also id.* at 7 ("In paragraph 46 of the Complaint and paragraph 44 of the Amended Complaint, Plaintiff alleges that Defendant spouted racially-insensitive jokes and provided a brief description of the

joke. In paragraph 50 of the Complaint and paragraph 48 of the Amended Complaint, Plaintiff makes statements that are only meant to inflame readers and have no bearing on Plaintiff's injuries and any alleged violations of law by Defendant. In paragraph 51 of the Complaint and paragraph 49 of the Amended Complaint, Plaintiff asserts further statements that have no bearing on Plaintiff's injuries or on any alleged violations of law by Defendant. Each of these paragraphs contains immaterial and scandalous matters, which do not impact Plaintiff's allegations of physical abuse or injury." (citations omitted)).

To the extent that Plaintiff includes these racially-insensitive statements, allegedly made by Roden, to support a civil rights claim against Roden based on the alleged sexual assault, it does not appear that they should be struck. *See, e.g.*, *United States v. Coney*, 689 F.3d 365, 379-80 (5th Cir. 2012) ("[W]e reject Barbara's contention that the disputed pleadings were 'scandalous.' Although the disputed pleadings might 'offend[ ] the sensibilities' of Barbara and her attorneys, those pleadings are not scandalous because they are directly relevant to the controversy at issue and are minimally supported in the record. *See In re Gitto Global Corp.*, 422 F.3d 1, 12 (1st Cir. 2005) (holding that a pleading is not 'scandalous' under Rule 12(f) merely because 'the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action[;] [a]s a result, courts have permitted allegations to remain in the pleadings when they supported and were relevant to a claim for punitive damages') (quoting *Hope ex rel. Clark v. Pearson*, 38 B.R. 423, 424-25 (Bankr. M.D. Ga.1984)).").

The motion to strike should therefore be denied.

## Recommendation

The Court should grant the eight pending Rule 12(b)(6) motions to dismiss [Dkt. Nos. 61, 74, 76, 77, 79, 81, 96, & 99] without prejudice to Plaintiff's filing, within a reasonable time that the Court sets, one final amended complaint that cures all deficiencies noted in these findings, conclusions, and recommendation. If Plaintiff elects to file a second amended complaint, the Court should require that, when he files that complaint, he also file a separate motion for leave to continue to proceed anonymously that demonstrates a privacy interest that outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings. And the Court should deny Defendant Roden's motion to strike under Rule 12(f). *See* Dkt. No. 81 at 6-8.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: July 29, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE