IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN ROE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-2497-B-BN |
| | § | |
| JOHNSON COUNTY, TEXAS, ET AL. | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

A plaintiff who identifies by the pseudonym John Roe, a former immigration
and state jail detainee, then proceeding *pro se*, brought, through a first amended
complaint [Dkt. No. 50], 70 separate claims, mostly for alleged civil rights violations,
against various entities and individuals. His case has been referred to the
undersigned United States magistrate judge for pretrial management under 28
U.S.C. § 636(b) and an order of reference from United States District Judge Jane J.
Boyle. *See* Dkt. No. 8.

Eight motions to dismiss the first amended complaint were filed. There was
extensive briefing. And, accepting the undersigned's recommendation, *see* Dkt. No.
152, to which Plaintiff objected, *see* Dkt. No. 153, the Court dismissed the first
amended complaint without prejudice on August 22, 2019, *see* Dkt. No. 155; *see also
Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2019 WL 5031357 (N.D. Tex. July
29, 2019), *rec. accepted*, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019) ("*Roe I*").

Plaintiff then filed a second amended complaint *pro se*, asserting 40 separate

causes of action. *See* Dkt. No. 156. And, although counsel then appeared on behalf of Plaintiff, *see* Dkt. No. 159, Plaintiff elected not to seek leave to file a third amended complaint with the assistance of counsel, *see* Dkt. Nos. 160 & 163.

Before the Court now are the following motions to dismiss the second amended complaint: (1) Defendants Jacob Aguilar and Ivan Alvarado's motion to dismiss, *see* Dkt. No. 172; (2) Defendants Johnson County, Texas, Sheriff Bob Alford, Sheriff Adam King, David Blankenship, Bill Moore, Stu Madison, and Jeffrey Acklen's motion to dismiss, *see* Dkt. Nos. 179 & 180; (3) Defendant United States of America's motion to dismiss, *see* Dkt. Nos. 181 & 182; (4) Defendant Phillip Roden's motion to dismiss, *see* Dkt. No. 187; (5) Defendants Southwestern Correctional, LLC d/b/a LaSalle Corrections, LLC d/b/a LaSalle Southwest Corrections and LaSalle Management Company, LLC's ("LaSalle") motion to dismiss, *see* Dkt. No. 189; and (6) Defendant Eddie Williams and Robert Matson's motion to dismiss, *see* Dkt. No. 190. Defendants Aguilar and Alvarado have also moved the Court to apply the "judgment bar" pursuant to the Federal Tort Claims Act ("FTCA"). *See* Dkt. No. 217. And the parties have filed responses and replies.

The undersigned enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent explained below, the Court should grant certain motions to dismiss to the extent that the Court should dismiss the federal claims with prejudice and defer (for now) its ruling on certain state law claims and that the Court should grant the motion to apply the FTCA's judgment bar, sua sponte dismiss the FTCA claims against the United States based on res judicata,

and therefore moot the federal defendants' motions to dismiss.

## Legal Standards

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). But a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678

(quoting, in turn, FED. R. CIV. P. 8(a)(2))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project*, 920 F.2d at 899 ("Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context.")).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see*

*Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

While the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g., Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a

motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

## Analysis

Plaintiff's second amended complaint pares down his claims and, for many claims, points the Court to the specific factual allegations that he alleges support that claim. But the timeline applicable to his amended complaint holds true:

> Plaintiff was taken into immigration custody and detained in Johnson County in November 2015. He suffered a seizure there that month and was transported to a local hospital.
>
> At the hospital, he alleges that he was sexually assaulted by a guard assigned to him. He reported the assault when he returned to the detention center. He was examined, and his wife filed a civil rights complaint with the Department of Homeland Security ("DHS") related to the assault.
>
> On December 1, 2015, he took a polygraph exam. The next day, he was arrested for making a false report to a peace officer and received related disciplinary sanctions. Also on that day, DHS agents interview him regarding his sexual assault outcry.
>
> On either December 2 or December 3, he alleges that he was pepper-sprayed to force him out of his cell, after he refused to be taken to booking. He was then taken into segregation, where he alleges that he was prevented from contacting an attorney. And, after spending ten days in the criminal section of the jail, he posted bail and was transferred back to immigration detention.
>
> On December 12, 2015, he was transferred to an immigration processing center in Pearsall, Texas, where he was detained for five weeks. He posted bail and was released from immigration custody on January 2, 2016. The state prosecution for making a false report nevertheless continued. And immigration authorities continued to investigate Plaintiff's sexual assault allegation.
>
> On August 25, 2017, Plaintiff failed to appear for his trial on the state charge. On December 19, 2017, he was arrested, and an immigration detainer prevented his release from custody. After his return to custody, Plaintiff alleges that he was retaliated against, that his food was tampered with, and that he was pepper-sprayed a second time. He further alleges that, while he was in pretrial custody, the Johnson County Defendants and the LaSalle Defendants attempted to frame and entrap him.

In May 2018, he was found not guilty on the making-a-false-report offense. He was then taken back into immigration custody. And, on September 28, 2018, he received a response to his civil rights complaint – DHS's office of civil rights and civil liberties "found concerns about [the Johnson County Sheriff's Office's] investigation and prosecution of you for making a false police report. Therefore, [the office] made a recommendation to ICE regarding decisions to prosecute sexual assault complainants."

*Roe I*, 2019 WL 5031357, at *2.

I.   Limitations

In addition to claims centered on the alleged sexual assault in 2015, Plaintiff asserts conditions-of-confinement claims applicable to his 2015 detention and his 2017 detention, and he asserts claims particular to the criminal prosecution that ended in his acquittal. Multiple defendants previously moved to dismiss Plaintiff's claims accruing before September 19, 2016, two years prior to the date that he filed this action. *Cf. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003))).

The Court has already "exhaustively surveyed the legal standards applicable to accrual and tolling." *Roe I*, 2019 WL 3980737, at *1 (citing *Roe I*, 2019 WL 5031357, at *5-*9). But, for completeness, they will be repeated here:

Plaintiff primarily asserts civil rights claims against government actors under 42 U.S.C. §§ 1983 and 1985 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* Dkt. No. 50 at 51-169, 192-200. Regardless whether these claims are asserted against state or federal actors, "[b]ecause there is no federal statute of limitations for § 1983 and *Bivens* claims, federal courts apply

the general personal injury limitations period and tolling provisions of the forum state," *Starks v. Hollier*, 295 F. App'x 664, 665 (5th Cir. 2008) (per curiam) (citing *Brown v. Nationsbank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993)).

As such, there claims are governed by Texas's two-year, personal-injury limitations statute. *See, e.g., Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987) ("Civil rights actions brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1988 are deemed analogous to Texas tort actions, and therefore, the applicable limitations period is ... two years." (citations omitted)); *Shelby v. City of El Paso, Tex.*, 577 F. App'x 327, 331 (5th Cir. 2014) (per curiam) ("[O]ur cases have consistently held that '[t]he statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state.'" (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001))).

Texas's two-year statute of limitations for personal injury actions, *see* TEX. CIV. PRAC. & REM. CODE § 16.003, also applies to Plaintiff's various state law tort claims, *see* Dkt. No. 50 at 170-92. But, to the extent that Plaintiff alleges state law claims based on "any injury that 'arises as a result' of sexual assault," it appears that Texas's "five-year statute of limitations applies." *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 624 (W.D. Tex. 2017) (quoting TEX. CIV. PRAC. & REM. CODE § 16.0045(b))[1]; *but see King-White*, 803 F.3d at 759-61 (finding Section 16.0045(b) not applicable to federal civil rights claims based on an alleged sexual assault).

As to the civil rights claims, while the applicable two-year limitations period is borrowed from Texas law, courts "determine the accrual date of [these claims] by reference to federal law." *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

---

[1] *See also Stephanie M. v. Coptic Orthodox Patriarchate Diocese of S. U.S.*, 362 S.W.3d 656, 660 (Tex. App. – Houston [14th Dist.] 2011, pet. denied) ("[S]ection 16.0045(a) applies to a 'suit for personal injury,' which includes claims for negligence. There is no language restricting this particular limitations statute to certain types of personal-injury claims; hence, there is nothing in the statute to indicate that the legislature intended to limit this provision to causes of action against only the perpetrators of sexual assault. ... Taken together, the provisions of section 16.0045 unambiguously show a legislative intent to provide victims of sexual assault, aggravated sexual assault, and continuous sexual abuse of young children more time to seek damages for their injuries."); *cf. C.R. v. Am. Inst. Foreign Study, Inc.*, No. SA-12-CA-1046, 2013 WL 5157699, at *8 (W.D. Tex. Sept. 12, 2013) (finding Section 16.0045 applicable "to claims for medical expenses asserted by the parents of the victim").

"Federal law holds generally that an action accrues when a plaintiff has a complete and present cause of action, or, expressed differently, when the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997); internal quotation marks omitted). Put another way, "the limitations period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 576); *see also Shelby*, 577 F. App'x at 331-32 ("The standard in § 1983 actions provides 'that the time for accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" (quoting *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989))).

Accrual of Plaintiff's state law claims, similarly, are measured under "the legal injury rule [ ], under which 'a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur.'" *Suter v. Univ. of Tex. at San Antonio*, 495 F. App'x 506, 509 (5th Cir. 2012) (per curiam) (quoting *Childs v. Haussecker*, 974 S.W.2d 31, 36-37 (Tex. 1998); citing *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997)); *see also Williams v. Kroger Tex., L.P.*, No. 3:16-cv-1631-L, 2016 WL 5870976, at *3 n.1 (N.D. Tex. Oct. 16, 2016) ("The statute of limitations for a personal injury cause of action under Texas law begins to run from the date a wrongful act causes an injury." (citing *Childs*, 974 S.W.2d at 36)).

And, because Texas's statute of limitations is borrowed in civil rights cases filed in federal court, "Texas's equitable tolling principles control this litigation." *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (per curiam) (citing *Rotella v. Pederson*,144 F.3d 892, 897 (5th Cir. 1998)); *see also Gartrell*, 981 F.2d at 257 ("In applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions."); *FDIC v. Dawson*, 4 F.3d 1303, 1309 (5th Cir. 1993) ("[W]hen state statutes of limitation are borrowed, state tolling principles are to be the 'primary guide' of the federal court. [And t]he federal court may disregard the state tolling rule only if it is inconsistent with federal policy." (citations omitted)).

"Texas courts sparingly apply equitable tolling and look, *inter alia*, to whether a plaintiff diligently pursued his rights; litigants may not use the doctrine to avoid the consequences of their own negligence. Federal courts also apply the doctrine sparingly." *Myers*, 464 F. App'x at 349 (citations and internal quotation marks omitted); *compare, e.g., Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App. – Dallas 2005) ("Equitable tolling applies in situations where a claimant actively pursued his judicial remedies but filed a defective pleading during the

statutory period, or where a complainant was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass." (citations omitted)), *with Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) ("[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010))).

So, whether under Texas law or under federal law, equitable tolling requires both diligence *and* "circumstances that caused a litigant's delay [that] are both extraordinary and beyond [his] control." *Menominee Indian Tribe*, 136 S. Ct. at 756 (emphasis in original); *see, e.g., Rafter v. Tex. Dep't of Crim. Justice*, Civ. A. No. H-11-0691, 2012 WL 3314905, at *7 (S.D. Tex. Aug. 13, 2012) ("Whether under federal or Texas law, equitable tolling is inappropriate where the plaintiff has failed to exercise diligence in preserving his or her legal rights."(citations omitted)); *Farmer v. D&O Contractors*, 640 F. App'x 302, 307 (5th Cir. 2016) (per curiam) (holding that because "the FBI did not actually prevent Farmer or any other Plaintiff from filing suit" but instead "advised Farmer that filing suit would have been against the FBI's interest" and "that the RICO claims could be filed after the investigation concluded," "[a]ny obstacle to suit was ... the product of Farmer's mistaken reliance on the FBI, and a party's mistaken belief is not an extraordinary circumstance" (citing *Menominee Indian Tribe*, 136 S. Ct. at 756-57)).

Texas's "equitable tolling principles" also include "tolling based on fraudulent concealment and the 'discovery rule.'" *King-White*, 803 F.3d at 764 (citing *Rotella*, 144 F.3d at 896-97); *see also Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015) ("We have recognized two doctrines that may delay accrual or toll limitations: (1) the discovery rule and (2) fraudulent concealment." (citing *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927, 929-30 (Tex. 2011))).

> "Fraudulent concealment tolls limitations until the claimant, using reasonable diligence, discovered or should have discovered the injury." *Thompson v. Deutsche Bank Nat'l Tr. Co.*, 775 F.3d 298, 307 (5th Cir. 2014) (quoting *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 676 (5th Cir. 2013)) (quotation marks omitted). The Fifth Circuit "applies a four-prong test for fraudulent concealment under Texas law, under which the plaintiff must demonstrate: '(1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception.'" *Id.*

(quoting *Priester*, 708 F.3d at 676). "'The estoppel effect of fraudulent concealment ends,' however, 'when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action.'" *King-White*, 803 F.3d at 764 (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983)).

*Walker v. Stephens*, No. 7:17-cv-168-O-BP, 2018 WL 8490059, at *6 (N.D. Tex. June 21, 2018) (citation modified).

> Under Texas law, the "discovery rule" provides a "very limited exception to statutes of limitations." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996), *superseded by statute as stated in Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 3 (Tex. 1999). While accrual of a Texas personal injury action generally occurs when "a wrongful act causes an injury, regardless of when the plaintiff learns of that injury," the "judicially-crafted" discovery rule defers accrual of the cause of action if "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Childs*, 974 S.W.2d at 36-37 (Tex.1998) (citation and quotation marks omitted). In such a circumstance, the cause of action does not accrue until the plaintiff knows or reasonably should have known of the injury. *Id.* at 37.

*King-White*, 803 F.3d at 764 (citation modified).

The federal discovery rule, somewhat by contrast, is strictly "an accrual rule for the applicable statute of limitations – not a tolling rule – and simply defers the accrual of a cause of action." *Shelby*, 577 F. App'x at 331 (admonishing parties not to "confuse[] tolling and accrual rules for statute of limitations," given the distinction in which law – state or federal – governs, and then citing *Altai*, 918 S.W.2d at 455 ("The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence should have known of the facts giving rise to the cause of action.")).

"The federal standard used to determine the accrual of a section 1983 cause of action is that the cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Longoria v. City of Bay City, Tex.*, 779 F.2d 1136, 1138 (5th Cir. 1986) (citing *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980)); *accord Walker*, 550 F.3d at 414; *Shelby*, 577 F. App'x at 331-32; *see also Kingham v. Pham*, 753 F. App'x 336, 337 (5th Cir. 2019) (per curiam) ("Under the federal 'discovery rule,' an action accrues when a plaintiff knows both the existence of an injury and the cause of the injury." (citing *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 190

(5th Cir. 2011))).

      When a plaintiff in a civil rights actions knows or has reason to know of an injury and the cause of that injury – such as arrest by police officers that he believes to be wrongful or use of force by prison guards that he believes to be excessive – the limitations period begins, and he acquires a duty to fully investigate his claims. Simply because, for example, a plaintiff later learns – in pursuing his investigation, for example – that a particular defendant may be liable for his harm does not restart the limitations period. A decision by the Fifth Circuit demonstrates this principle:

> The fact that the Longorias took all of this action after the first flood and before the second clearly establishes that they knew of their injury, and were on notice of its cause, at the occurrence of the first flood.... [W]e reject the Longorias' argument here that the statutory period was tolled until they learned through a newspaper article of possible wrongdoing by this defendant. They were on ample notice after the first flood that it would be appropriate to investigate the possibility of fraud. At that point, the limitations period began to run and the Longorias acquired a duty to exercise reasonable diligence to discover their cause of action. The argument that the statutory period is tolled until the plaintiff learns that the defendant's conduct may have been wrongful finds no support in the relevant case law.

*Longoria*, 779 F.2d at 1139 (citing *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1366 (5th Cir. 1984)))....

      Plaintiff's framing of the factual allegations in support of several claims prevents a precise determination that a particular, numbered claim is time-barred. *See, e.g.,* Claims I; XI; XVIII; XXVII; XXXVII; XXXVIII; LXI. For purposes of limitations, then, Plaintiff's claims may be divided into three categories: (1) civil rights claims and state law claims based on events that occurred in November and December 2015 and prior to Plaintiff's release from immigration custody in January 2016 other than those state law claims based on injuries that arise as a result of an alleged sexual assault that occurred in November 2015; (2) state law claims based on injuries that arise as a result of the alleged sexual assault; and (3) all claims based on events that occurred once Plaintiff was rearrested in December 2017. Claims in the first category are time-barred, while claims in the second and third are not.

      Plaintiff's claims accrued when he was injured – when he knew or should have known there was a basis for the claim. *See, e.g., Rafter*, 2012 WL 3314905, at *7 ("Generally, under both federal and Texas law, a cause of action accrues when a plaintiff suffers an injury; the plaintiff

cannot wait until she knows the full extent or the consequences of the injury before filing." (collecting cases)). No claim as alleged reflects that, as to that claim, Plaintiff was unaware of both an injury and, at a minimum, "circumstances [that] would lead a reasonable person to investigate further." *Piotrowski*, 237 F.3d at 576.

For example, as to his various claims based on sexual assault, Plaintiff reported the alleged sexual assault "to his wife with the instruction to contact Department of Homeland Security, Office of Inspector General (DHS-OIG) sexual assault hotline" two days after he claims it occurred. Dkt. No. 50, ¶ 51. Similarly, Plaintiff "submitted several grievances regarding [conditions of confinement, which he contends] Defendants largely ignored," *id.*, ¶ 864, while his various claims based on false imprisonment accrued "when the alleged false imprisonment end[ed,]" *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (citation omitted); *see also Moon v. City of El Paso*, 906 F.3d 352, 358 (5th Cir. 2018) ("Making our best *Erie* guess, we believe the Supreme Court of Texas would side with the intermediate appellate courts and trusted treatises. False imprisonment is a continuing tort in Texas – the injury persists until the imprisonment ends.").

Plaintiff has responded to Defendants' limitations arguments by raising more than a dozen reasons why accrual of his claims should be delayed or limitations tolled, *see, e.g.,* Dkt. No. 137 at 26-74 – many of which conflict with the accrual rules as explained above and the limited universe of tolling doctrines set out above, *see, e.g., Cotton v. Tex. Express Pipeline, LLC*, No. 6:16-CV-00453-RP-JCM, 2017 WL 3709093, at *4 (W.D. Tex. July 19, 2017) ("Under Texas law, there are only two recognized doctrines that may delay accrual or toll limitations: (1) the discovery rule; and (2) fraudulent concealment." (citing *Valdez*, 465 S.W.3d at 229)), *rec. adopted in applicable part*, 2018 WL 1419346 (W.D. Tex. Mar. 22, 2018).

But the factually-plausible allegations of his pleading – his amended complaint [Dkt. No. 50] – "fail to raise some basis for tolling or [delayed accrual]," *King-White*, 803 F.3d 754, 758, that is supported by the case law set out above, *see, e.g., Moon*, 906 F.3d at 358-59 ("Moon alleges no facts sufficient to toll the pertinent limitations period. Nor does any equitable doctrine toll limitations here. State law generally governs tolling. In Texas, two doctrines, neither applicable in this case, may toll limitations (or delay accrual): fraudulent concealment, or injuries that are both inherently undiscoverable and objectively verifiable. Our review of the record and the governing law leaves us unpersuaded that Moon has satisfied any applicable Texas tolling doctrine or articulated specific facts that warrant extending limitations." (footnotes omitted)).

For these reasons, the Court should dismiss with prejudice all

> civil rights claims and state law claims based on events that occurred in
> November and December 2015 and prior to Plaintiff's release from
> immigration custody in January 2016 other than those state law claims
> based on injuries that arise as a result of an alleged sexual assault that
> occurred in November 2015.

*Roe I*, 2019 WL 5031357, at \*5-\*9.

Judge Boyle agreed, and the Court granted Plaintiff leave to amend, after

advising him that

> the findings, conclusions, and recommendation correctly point out that
> the applicable landscape may not be as broad as Plaintiff desires. But,
> if Plaintiff still believes there are other theories of delayed accrual or
> tolling not discussed in the findings, conclusions, and recommendation
> – and that these theories are properly supported by controlling case law
> – he should present those theories to the Court through the facts to be
> alleged in any second amended complaint he elects to file.

*Roe I*, 2019 WL 3980737, at \*1 (citation omitted); *see id.* ("Factually-plausible

allegations – made through a complaint – are necessary to support any legal

argument to delay the accrual of a cause of action or show that the limitations period

should be tolled." (citing *King-White*, 803 F.3d at 758; *Moon*, 906 F.3d at 358-59)).

But Plaintiff's second amended complaint fails to allege plausible facts to

support the delayed accrual or tolling of his claims. *See, e.g.*, Dkt. No. 156, ¶¶ 134-38.

In his amended pleading, Plaintiff instead seems to argue that the claims the Court

previously found to be time barred may be considered timely under the Alien Tort

Claims Act (also referred to as the Alien Tort Statute, or "ATS"), 28 U.S.C. § 1350

(and possibly under the Torture Victim Protection Act ("TVPA")). *See* Dkt. No. 156, ¶

138 & n.28; *id.*, ¶¶ 338-42 (Count XXIX); *see also id.*, ¶ 3 (alleging that Plaintiff is a

Hattian national and not a permanent resident of the United States).

"The ATS provides, in full, that '[t]he district courts shall have

> original jurisdiction of any civil action by an alien for a tort only,
> committed in violation of the law of nations or a treaty of the United
> States.'" *Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108, 113-14 (2013)
> (quoting 28 U.S.C. § 1350). Although the statute "provides district courts
> with jurisdiction to hear certain claims," it "does not expressly provide
> any causes of action." *Id.* at 115. Rather, the ATS provides jurisdiction
> for a "modest number of international law violations" that are derived
> from federal common law. *Id.* (quoting *Sosa v. Alvarez-Machain*, 542
> U.S. 692, 724 (2004)).

*Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 192 (5th Cir. 2017) (citations modified).

As such, "[t]he ATS is akin to 42 U.S.C. § 1983 insofar as it does not itself create substantive rights, but rather provides a procedural vehicle through which torts recognized either under the law of nations or treaties of the United States may be actionable." *Awan v. United States*, No. 16 Civ. 871 (CBA) (VMS), 2020 WL 1172634, at *7 (E.D.N.Y. Feb. 3, 2020) (citations omitted), *rec. adopted*, 2020 WL 1166448 (E.D.N.Y. Mar. 11, 2020). And "[t]he principal objective of the statute, when first enacted, was to avoid foreign entanglements by ensuring the availability of a federal forum where the failure to provide one might cause another nation to hold the United States responsible for an injury to a foreign citizen.*" Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1397 (2018) (citing *Sosa*, 542 U.S. at 715-19; *Kiobel*, 569 U.S. at 123-24).

But the ATS does not stand in for Section 1983 or *Bivens* simply because an alien brings civil rights claims that could otherwise be brought under either cause of action. *See Sosa*, 542 U.S. at 736-37 ("[Alvarez] certainly cites nothing to justify the federal courts in taking his broad rule as the predicate for a federal lawsuit, for its implications would be breathtaking. His rule would support a cause of action in

federal court for any arrest, anywhere in the world, unauthorized by the law of the jurisdiction in which it took place, and would create a cause of action for any seizure of an alien in violation of the Fourth Amendment, supplanting the actions under [Section 1983 and *Bivens*], that now provide damages remedies for such violations. It would create an action in federal court for arrests by state officers who simply exceed their authority; and for the violation of any limit that the law of any country might place on the authority of its own officers to arrest. And all of this assumes that Alvarez could establish that Sosa was acting on behalf of a government when he made the arrest, for otherwise he would need a rule broader still.")

Similarly, a plaintiff who is also not a citizen of the United States may not rely on the ATS (or the TVPA) to extend the time in which he should have brought claims under Section 1983, under *Bivens*, or under state law. *See, e.g.*, *Prado v. City of Fredericksburg Police Dep't*, No. 04-10-005650CV, 2011 WL 1158368, at *3 (Tex. App. – San Antonio Mar. 30, 2011) (concluding that the ATS (and its ten-year statute of limitations) does not apply to an excessive force claim by a citizen of Mexico); *Zhao v. Unknown CIA Officer*, Civ. A. No. H-09-1963, 2010 WL 97798, at *1-*2 (S.D. Tex. Jan. 6, 2010) ("Zhao was detained in the United States. The laws of this country protect him here. He cannot use a vague, foreign-policy statute to manufacture a claim from a domestic incident with an American agent. He may have had a Constitutional claim, but the time to assert it has long since elapsed. This nation's commitments under the Constitution do not generate an accompanying tort to extend the statute of limitations for aliens." As to the TVPA, "the Act imposes liability on a torturer who

acts under the color of foreign law, not domestic. Zhao was stopped, questioned, and searched by an agent of the United States on American soil. He could have timely pursued his Constitutional claims but did not.").

Therefore, for the reasons fully explained in *Roe I*, *see* 2019 WL 5031357, at *5-*10, set out above, and for the further reasons explained above, the Court should dismiss the following claims (asserted under Section 1983 and *Bivens*) in full as time barred and with prejudice: Counts I, II, III, IV, V, VI, VII, VIII, X, XI, and XV.

The Court should also dismiss with prejudice all remaining claims under Section 1983, *Bivens*, or state law to the extent that an aspect of the claim is based on events that occurred in November and December 2015 and prior to Plaintiff's release from immigration custody in January 2016 other than those state law claims based on injuries that arise as a result of an alleged sexual assault that occurred in November 2015. For example, Plaintiff seems to allege that multiple claims are based on facts that accrued in late 2015 and in Spring 2018, *see, e.g.*, Count XII, or based on his 2015 custody and his 2017 custody, *see, e.g.*, Count IX. If not the claims entirely, factual foundations for these claims, as well as others, are outside the limitations period. But there are separate reasons supporting dismissal of these claims, which the undersigned will address below.

And, for the reasons explained above, the Court should dismiss with prejudice Count XXIX, which is pleaded as a standalone claim under the ATA.

II.    Official Capacity, *Bivens*, and Section 1983 Municipal Liability

Plaintiff asserts multiple claims against Johnson County, former Johnson

County Sheriff Bob Alford, current Sheriff Adam King, LaSalle (as operator of the Johnson County jail), LaSalle's warden, Eddie Williams, and jail administrator David Blankenship.

As to most of these individual defendants (and several others), Plaintiff asserts claims against the individuals in their official and in their individual capacity. The Court should dismiss all official capacity claims with prejudice, since "[a]n official-capacity lawsuit is 'only another way of pleading an action against an entity of which an officer is an agent.'" *Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). When an individual is sued is his official capacity, liability is imposed "on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond." *Id.* (quoting *Brandon v. Holt*, 469 U.S. 464, 471-72, (1985)); *see also Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

Thus, where a plaintiff brings claims against both a public official, such as a law enforcement officer, in his official capacity and the public entity for which he works, the claims "essentially merge." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). The Court may then dismiss the claims against the public official as duplicative. *See Flores v. Cameron Cnty.*, 92 F.3d 258, 261 (5th Cir. 1996) (where the district court had dismissed claims against county commissioners in their official capacities "because those claims were duplicative of

the claims against the County"); *see also Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 832 (S.D. Tex. 2011) ("The Fifth Circuit has held that it is appropriate to dismiss claims against officers in their official capacities when the 'allegations duplicate claims against the respective governmental entities themselves.'" (quoting *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001))).

The undersigned turns next to LaSalle and Williams's argument (also made by Defendant Matson) that Plaintiff's claims accruing while he was an immigration detainee housed at the jail (from November 11, 2015, when he was arrested by immigration authorities, through December 2, 2015, when he was also arrested by Johnson County) are properly considered under *Bivens* – as opposed to Section 1983. For purposes of the motions to dismiss, this distinction may turn on matters outside of the pleadings, such as Johnson County's contract with LaSalle. *See, e.g., Rodriguez v. Bexar Cnty.*, No. SA-18-CV-248-XR, 2018 WL 4431433, at *11 (W.D. Tex. Sept. 17, 2018) ("[I]t is unclear at this point which of the various conditions he bases his claim on are under the control of Bexar County versus UHS. Under § 1983, local governments are responsible only for their own acts. *Doe v. United States*, 831 F.3d 309, 318 (5th Cir. 2016). Based on the allegations solely in the Complaint, however, rather than information outside the pleadings, the Court finds Plaintiff's allegations sufficient to state a claim for unconstitutional conditions of confinement related to medical care, and will deny the motion to dismiss at this time."); *Doe*, 831 F.3d at 316-17 (examining the facts specific to control there to those in *Henderson v. Thrower*, 497 F.2d 125 (5th Cir. 1974) (per curiam), and *Alvarez v. GEO Grp., Inc.*, No. SA-09-

CV-0299, 2010 WL 743752 (W.D. Tex. Mar. 1, 2010)); *see also Naranjo v. Thompson*, 809 F.3d 793, 806 n.16 (5th Cir. 2015) (describing as a "thorny question" whether private companies managing county-owned prisons housing federal prisoners are proper § 1983 defendants" (brackets omitted)); *Parks v. Terrebonne Par. Consol. Gov't*, Civ. A. No. 16-15466, 2017 WL 699838, at *8 (E.D. La. Feb. 22, 2017) (If the defendant "is a private actor, 'the challenged "conduct allegedly causing the deprivation of a federal right" must be "fairly attributable to the State" for Section 1983 to apply.'" (quoting *Doe*, 831 F.3d at 314)).

Regardless, whether asserted under Section 1983 or *Bivens*, these claims are time barred for the reasons explained above.

To bring claims against Johnson County and LaSalle, Plaintiff "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).[2] "While municipalities can be sued directly under § 1983,

---

[2] *See also Roe I*, 2019 WL 5031357, at *16 ("[W]hile the LaSalle entities may not be liable under *Bivens*, to the extent that Section 1983 may fit Plaintiff's claims against the LaSalle Defendants, 'the operation of a prison is a fundamental government function.' *Olivas v. Corrs. Corp. of Am.*, 408 F. Supp. 2d 251, 254 (N.D. Tex. 2006) (citing *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) ('We agree with the Sixth Circuit and with those district courts that have found that private prison-management corporations and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury.'), *aff'd*, 215 F. App'x 332 (5th Cir. 2007) (per curiam). And '[t]he standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function.' *Id.* at 254-55 (citing *Eldridge v. CCA Dawson State Jail*, No. 3:04-CV-1312-M, 2004 WL 1873035, at *2 (N.D. Tex. Aug. 19, 2004), *rec. accepted*, 2004 WL

*Monell* establishes that they 'cannot be found liable on a theory of vicarious liability or respondeat superior.'" *Webb v. Twn. of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citing, in turn, *Monell*, 436 U.S. at 690-91)). And, "[t]hough [Plaintiff] need not offer proof of [his] allegations at this stage, [he] still must plead facts that plausibly support each element of § 1983 municipal liability …." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678).

This requirement also applies to Plaintiff's claims against Alford, King, Williams, and Blankenship to the extent that he seeks to hold them liable for the acts of their subordinates. *See, e.g.*, *Isaac v. Glennis*, 32 F.3d 566, 1994 WL 442429, at *2 (5th Cir. July 29, 1994) (noting that the limitations applicable to alleging municipal liability "also apply when a sheriff or similar official is sought to be held liable for acts of his subordinates" (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987))).

As the Court set out in *Roe I*,

> "[a] municipality and/or its policymakers may be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell*, 436 U.S. at 694; citation omitted). That is, "[t]here is no vicarious municipal liability

---

2075423 (N.D. Tex. Sept. 16, 2004)); *see also Olivas*, 215 F. App'x at 333 ('Contrary to Olivas's argument, CCA may not be held liable on a theory of respondeat superior.' (citing *Monell*, 436 U.S. at 691)); *J.M. v. Mgmt. & Training Corp.*, No. 3:15CV841-HSO-JCG, 2017 WL 3906774, at *7 (S.D. Miss. Sept. 5, 2017) ('The parties do not dispute that MTC, even though it is a private prison-management company, is treated as a municipality for purposes of Plaintiff's § 1983 claims.' (citations omitted)).").

under § 1983; rather, plaintiffs 'must prove that "action pursuant to official municipal policy" caused their injury.'" *Three Legged Monkey, L.P. v. City of El Paso, Tex.*, 652 F. App'x 236, 239 (5th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting, in turn, *Monell*, 436 U.S. at 691)).

....

To assert liability under *Monell*, a plaintiff must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski*, 237 F.3d at 578).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579 (quoting, in turn, *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted); *see also Pinedo v. City of Dallas, Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" (quoting *Piotrowski*, 237 F.3d at 582)).

"Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Pinedo*, 2015 WL 5021393, at *9 (citations omitted); *but cf. Anderson v. Marshall Cnty., Miss.*, 637 F. App'x 127, 134 (5th Cir. 2016) (per curiam) ("Even within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish." (citing *Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.")))).

"To plead a plausible claim, [Plaintiff] must allege facts that enable the court to draw the reasonable inference that '(1) the training procedures were inadequate; (2) the city's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [his] injury.'" *Pinedo*, 2015 WL 5021393, at *9 (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011)); *accord Peña*, 879 F.3d at 623 (A "failure-to-train

theory requires a plaintiff to prove that '1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.'" (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)).

Further, to the extent that Plaintiff also employs a ratification theory of municipal liability, the Fifth Circuit has held that, "if the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final," *Peterson*, 588 F.3d at 849 (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

But the Fifth Circuit "has limited the theory of ratification to 'extreme factual situations,'" *id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)), such as officers' killing of the innocent occupant of a truck or their shooting of a fleeing suspect in the back, *see id.* (citations omitted)); *accord Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017) ("Ratification ... is limited to 'extreme factual situations.'" (quoting *World Wide Street Preachers Fellowship v. Twn. of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (quoting, in turn, *Peterson*, 588 F.3d at 848))); *see also Davidson*, 848 F.3d at 395-96 ("Here, the underlying conduct by Officers Flagg and Jones, while unconstitutional, was not sufficiently extreme to qualify for a finding of ratification." (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)))).

The Fifth Circuit has "also explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 849 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)); *accord Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010); Davidson, 848 F.3d at 395; *see, e.g., Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) (per curiam) ("The only evidence of ratification Medina identifies is that Ortiz accepted the officer's use of force report, refused to turn over evidence until the lawsuit was filed, and defends the deputies' actions in this case. None of these allegations show that Ortiz approved of the use of excessive force or the denial of medical care." (citation omitted)).

*Roe I*, 2019 WL 5031357, at *16-*17 (citations modified).

The amended complaint lacked "'minimal factual allegations' that ultimately could support any theory of *Monell* liability." *Id.* at *17 (quoting *E.G. by Gonzalez v. Bond*, No. 1:16-cv-68-BL, 2017 WL 3493124, at *6 (N.D. Tex. June 29, 2017)).

In an attempt to plausibly allege municipal liability for the alleged incidents isolated to Plaintiff, the second amended complaint includes: (1) allegations concerning measures passed to prevent sexual abuse at detention facilities, such as the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 *et seq.*, and the Department of Homeland Security's implementation of PREA, *see* Dkt. No. 156, ¶¶ 24-30; (2) allegations concerning practices or customs related to shackling, *see id.*, ¶¶ 35-40; (3) three past incidents of alleged medical indifference by the Johnson County jail towards detainees (from 2011, 2015, and (possibly) 2019), all materially different from the facts Plaintiff alleges, *see id.*, ¶ 49; and (4) a local cable affiliate's investigation of conditions at four LaSalle facilities in North Texas, *see id.*, ¶ 51.

Plaintiff also includes many broad conclusory statements that lack specific facts to plausibly allege a policy or custom, *see, e.g., id.*, ¶¶ 41, 50, 52-55,[3] particularly as to his assertions that the sexual assault that he alleges was a result of an inadequate training policy or procedure (or a lack of either) adopted with deliberate indifference, *see, e.g., id.*, ¶¶ 79-85. None of these allegations are factually sufficient.

---

[3] *See also, e.g., id.*, ¶ 41 (The Johnson County jail "has a history of providing deficient medical care to detainees. However, [its] medical treatment of detainees has worsened ever since LaSalle took over management of the jail in May 2010."); *id.*, ¶ 50 (LVNs "are routinely left to make diagnoses, and are encouraged to provide inexpensive over-the-counter medications such as Tylenol to detainees instead of arranging for them to see a physician for a proper diagnosis and treatment. LaSalle provides *no* training or inadequate training program to its LVN nurses. Medical staff are discouraged from summoning emergency personnel as a cost-control measure, placing profits over detainees' health and lives. The decision to call 911 emergency personnel to transport detainees to a local hospital is at the discretion of Warden Eddie Williams, who is neither college educated nor a physician, and Physician's Assistant Robert Matson. The jail has also failed several inspections by the Texas Commission on Jail Standards (TCJS).").

To allege municipal liability based on training deficiencies, a plaintiff must provide facts to show − or from which the Court may infer − that the inadequate training policy or procedure (1) "was a 'moving force' in causing violation of plaintiff's rights" and (2) was adopted with deliberate indifference. *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018) (citations omitted). To qualify as a "moving force," "'the connection must be more than a mere 'but for' coupling between cause and effect.' 'The deficiency in training must be the actual cause of the constitutional violation.'" *Id.* (quoting *Valle v. City of Houston*, 613 F.3d 536, 546 (5th Cir. 2010)). And "[d]eliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Valle*, 613 F.3d at 547. As such, "a plaintiff must [allege – and then ultimately – ]show that

> in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Wright v. City of Garland, Tex.*, No. 3:10-cv-1852-D, 2014 WL 5878940, at *4-*5 (N.D. Tex. Nov. 13, 2014) (quoting *Valle*, 613 F.3d at 547 (quoting, in turn, *City of Canton v. Harris*, 489 U.S. 378, 390 (1989))).

> Deliberate indifference may be found in two types of situations: (1) a general failure to provide adequate training in light of the foreseeable serious consequences that could result, and (2) a municipality fails to act in response to the specific need to train a particular officer. *See City of Canton*, 489 U.S. at 390; *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000).

*Hobart v. Estrada*, 582 F. App'x 348, 357 (5th Cir. 2014) (citations modified).

Because Plaintiff does not allege that there was a failure to respond to a

specific need to train a defendant, he appears to invoke the first situation, which "usually" would also require allegations to "show a pattern of similar violations." *Id.* (citing *Valle*, 613 F.3d at 547); *see also Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) ("This proof-by-pattern method is 'ordinarily necessary.'" (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409, 117 (1997))).

Plaintiff provides no facts to plausibly allege a pattern of violations similar to his alleged sexual assault. *Cf.* Dkt. No. 156, ¶ 49.

> But even absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. Such an inference is possible in only very narrow circumstances: The municipal entity must have "fail[ed] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face."
>
> Thus, for example, if a city policymaker opts to provide no training whatsoever to police officers concerning the established and recurring constitutional duty not to use excessive deadly force, a factfinder may reasonably infer that the city acted with the requisite deliberate indifference. The [United States] Supreme Court explained as much in *Canton*, by way of hypothetical:
>
> > [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, can be said to be "so obvious[ ]" that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.
>
> "Under those circumstances there is an obvious need for some form of training." Otherwise, the Supreme Court has said, there would be "no way for novice officers to obtain the legal knowledge they require" to conform their behavior to their clear and recurring constitutional obligations.

*Littell*, 894 F.3d at 624-25 (citations and footnote omitted);

In sum, to plead *Monell* liability under the single-incident exception where

- 26 -

deliberate indifference is based on a general failure to provide adequate training, a plaintiff must allege factual content showing (or from which it may be inferred) that the training provided by the municipality was so inadequate that it should have predicted that those deficiencies would have caused the specific harm alleged, not that more or different training would have prevented it. *See, e.g.*, *Anderson*, 637 F. App'x at 134-35 ("To qualify for the single incident exception, [Plaintiff] must show that [sexual assault prevention] training was so inadequate that [either LaSalle or Johnson C]ounty should have predicted that an untrained officer would have [harmed Plaintiff] in the way [he was harmed]. Importantly, '[i]t is not enough to say that more or different training or supervision would have prevented' [this harm]. More specificity is required to resolve such a claim." (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375 (5th Cir. 2005))).

Plaintiff has not alleged municipal liability under this exacting pleading standard. And it is not enough that, throughout his second amended complaint, Plaintiff alleges as a basis for policy-based liability that the municipalities allegedly failed to adhere to PREA. *See, e.g.*, Dkt. No. 156, ¶ 380 ("The sexual assault was foreseeable in that Defendant knew or should have known that, given ICE detainees' vulnerability to sexual abuse by guards and others, the failure to institute DHS PREA, and/or ensuring that its facility were in compliance with the DHS policy, subjected Plaintiff to a general danger of being *assaulted* and *sexually assaulted* but also same could be anticipated under the circumstances.").

In the amended complaint, Plaintiff alleged a claim under PREA, but, as the

Court previously explained,

> because [PREA] "does not create or provide a private cause of action,
> [Plaintiff's] claims for relief ... under the provisions of the PREA must
> be dismissed ... for failure to state a claim upon which relief may be
> granted." *Molina v. Wise Cnty., Tex.*, No. 4:17-cv-809-Y, 2019 WL
> 2176272, at *2 (N.D. Tex. May 20, 2019); *see also Krieg v. Steele*, 599 F.
> App'x 231, 232-33 (5th Cir. 2015) (per curiam) ("Insofar as Krieg argues
> that his rights under the [PREA] were violated, other courts addressing
> this issue have found that the PREA does not establish a private cause
> of action for allegations of prison rape. Krieg has cited no case in support
> of his position; therefore, any claim raised under the PREA is properly
> dismissed as frivolous." (collecting cases)).

*Roe I*, 2019 WL 5031357, at *21.

As to the second amended complaint, Plaintiff cannot base municipal liability

on alleged PREA violations,

> [b]ecause PREA's findings are general in nature and do not specifically
> address [a] County's policies for training or monitoring in relation to the
> tasks or duties assigned to [officers] in the Jail, and [the plaintiff] points
> to no authority to show that the enactment of PREA changed the
> analysis for municipal liability under section 1983, the court disagrees
> with her assertion that PREA's general findings combined with a failure
> to implement PREA standards is sufficient to demonstrate deliberate
> indifference to trigger municipal liability for inadequate training or
> supervision. Plaintiff's argument regarding the effect of PREA on
> municipal liability is simply untenable and not supported by legal
> authority.

*Longoria v. Cnty. of Dallas, Tex.*, No. 3:14-cv-2111-L, 2017 WL 958605, at *17 (N.D.

Tex. Mar. 13, 2017), *vacated in part on reconsideration*, 2018 WL 339311 (N.D. Tex.

Mar. Jan. 9, 2018).

Plaintiff also seems to base municipal liability on actions taken by jail

administrator Blankenship, *see, e.g.*, Dkt. No. 156, ¶ 86, to whom Plaintiff reported

the alleged sexual assault, *see id.*, ¶¶ 61-63, and who testified that he was familiar

with past sexual assaults at the jail, *see id.*, ¶ 75. To the extent that Plaintiff alleges

that Blankenship was himself a policymaker, *see id.*, ¶ 86 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Brown*, 219 F.3d 450), "even a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the § 1983 claim,'" *Webb*, 925 F.3d at 214-15 (quoting *Davidson*, 848 F.3d at 395 (citing, in turn, *Pembaur*, 475 U.S. at 480, 482, 484-85); citing *Anderson v. City of McComb*, 539 F. App'x 385, 388 n.2 (5th Cir. 2013) ("When the policymakers are the violators, no further proof of municipal policy or custom is required.")).[4]

And, because the second amended complaint provides "more than speculation," *Peña*, 879 F.3d at 623, alleging that Blankenship oversaw day-to-day operation of the jail and thus was "delegated authority by the Sheriff respecting all law enforcement and custodial activities at the county jail," Dkt. No. 156, ¶ 86, it does not matter for purposes of a motion to dismiss whether Blankenship actually possessed final policymaking authority, *see Groden v. City of Dallas*, 826 F.3d 280, 283-84 (5th Cir. 2016) ("[T]he specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or

---

[4] *See also Howell v. Twn. of Ball*, 827 F.3d 515, 527 (5th Cir. 2016) ("A municipal liability claim under *Monell* usually involves allegations of an unconstitutional policy of general applicability, formally adopted by an official policy maker or informally established through long-standing practice or custom. A single unconstitutional action, however, may be sufficient in rare circumstances to impose municipal liability under *Monell*, if undertaken by the municipal official or entity possessing 'final policymaking authority' for the action in question." (citing *Brown*, 219 F.3d at 461; *Pembaur*, 475 U.S. at 480)).

ratified by the policymaker, under which the municipality is said to be liable.").

But the policymaking allegations as to Blankenship and, more fundamentally, <u>all</u> the factual assertions Plaintiff makes in support of municipal liability are aimed at the claims that should be dismissed as time barred. He alleges no facts to show that, as to the claims that are timely, there is a basis to tag a municipal authority with liability. *See* Dkt. No. 156, ¶¶ 106-33, 139-53.

For these reasons, the Court should dismiss with prejudice all or the municipal liability aspects of the following counts: Counts IX, XII, XIII, XIV, XVII, XX, XXI, XXII, XXIII, XXIV, XXV, XXVI, XXVII, and XXVIII.

III.   <u>Federal Defendants</u>

Defendants Aguilar and Alvarado, special agents of the U.S. Immigration and Customs Enforcement, move to dismiss the numerous constitutional claims alleged against them, under *Bivens*: Counts XXII, XXIII, XX, XXII, XXIII, and XIV. *See* Dkt. No. 172. As to the non-constitutional claims asserted against them in the second amended complaint (Counts XXX, XXXI, XXXII, XXXIII, XXXIV), a notice has been filed under 28 U.S.C. § 2679, including a certification from the Civil Chief for the United States Attorney's Office for this district that Aguilar and Alvarado "were acting within the scope of employment as employees of the United States at the time of the incidents out of which the claim[s] arose," Dkt. No. 173-1 at 2 (citing 28 U.S.C. § 2679; 28 C.F.R. § 15.4), thus substituting the United States as the party defendant, *see* 28 U.S.C. § 2679(d)(2). The United States then moved to dismiss these FTCA claims. *See* Dkt. No. 181.

Subsequently, Aguilar and Alvarado moved the Court to apply the FTCA's "judgment bar," *see* 28 U.S.C. § 2676, based on the final judgment entered in favor of the United States in *Roe v. United States*, No. 3:19-cv-792-C-BK, 2020 WL 2119349 (N.D. Tex. Feb. 28, 2020), *rec. adopted*, 2020 WL 1434505 (Mar. 24, 2020) ("*Roe II*"), *see* Dkt. No. 217, explaining that

> the dismissal with prejudice of Roe's separate suit against the United States[, *Roe II*,] constitutes "a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." Thus, the claims against Aguilar and Alvarado can and should be dismissed at this time on the basis of the FTCA judgment bar, and such a dismissal would render it unnecessary for the Court to consider and rule on the various other grounds for dismissal urged by Aguilar and Alvarado in their pending motion to dismiss. Aguilar and Alvarado therefore request application of the FTCA judgment bar here, and respectfully suggest that consideration of this issue will advance the interests of judicial economy and efficiency.

*Id.* at 2; *see id.* at 6 ("There can be no dispute that Roe's separate FTCA lawsuit against the United States involved the 'same underlying facts' as the *Bivens* claims asserted against Aguilar and Alvarado in this Court. And there is also no doubt that a final judgment was entered in Roe's separate lawsuit against the United States – Judge Cummings adopted Judge Toliver's recommendation to grant the United States's motion to dismiss, and thereafter entered a judgment dismissing all claims against the United States with prejudice. Accordingly, Roe's *Bivens* claims against Aguilar and Alvarado in this action are precluded as a matter of law by the FTCA judgment bar, 28 U.S.C. § 2676, and the Court should dismiss all claims against Aguilar and Alvarado on this ground alone without needing to reach the other arguments for dismissal previously advanced by Aguilar and Alvarado." (citations

and footnote omitted)); *id.* at 6 n.4 ("With respect to Roe's non-constitutional claims brought under the Alien Tort Statute and state law, the United States was substituted for these claims and filed a separate motion to dismiss. (Doc. 181.) Roe has not opposed the motion to dismiss the claims against the United States (Doc. 210), so that the United States's motion to dismiss should be granted for the reasons stated therein. Even if Roe had opposed the United States's motion to dismiss, the United States would still be entitled to dismissal on res-judicata grounds by reason of the judgment in *Roe II* before Judge Cummings.").

Plaintiff opposes application of the judgment bar, arguing that he filed his *Bivens* claims in *Roe I* before he filed his FTCA claims in *Roe II*, that the judgment bar should not apply to a *Bivens* claim, and that the judgment bar only applies when judgment is entered <u>against</u> the United States. *See generally* Dkt. No. 232.

Section 2676 provides that a "judgment in an action under [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. "Under the judgment bar provision, once a plaintiff receives a judgment (favorable or not) in an FTCA suit, he generally cannot proceed with a suit against an individual employee based on the same underlying facts." *Simmons v. Himmelreich*, 136 S. Ct. 1843, 1847 (2016).

Although it does not appear that the Fifth Circuit has yet so held, at least six other circuits have held that "the FTCA's judgment bar provision precludes a *Bivens* claim regarding the same subject matter, even if the claims arose within the same

suit." *White v. United States*, 959 F.3d 328, 333 (8th Cir. 2020) ("join[ing] other circuits in holding" the same: "*Unus v. Kane*, 565 F.3d 103, 121-22 (4th Cir. 2009) (holding that summary judgment award on FTCA claims barred *Bivens* claims arising out of the same subject matter); *Manning v. United States*, 546 F.3d 430, 434 (7th Cir. 2008) (holding that an FTCA judgment bars a *Bivens* claim raised in the same suit); *Harris v. United States*, 422 F.3d 322, 333 (6th Cir. 2005) (same); *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 858-59 (10th Cir. 2005) (same); *Arevalo v. Woods*, 811 F.2d 487, 490 (9th Cir. 1987) (same); *see also Carlson v. Green*, 446 U.S. 14, 19-20 (1980) (noting that it is 'crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action').");  *see also Michalik v. Hermann*, No. Civ. A. 99-3496, 2002 WL 31844910, at *2 (E.D. La. Dec. 16, 2002) ("[I]t is widely recognized that a judgment in favor of the United States on the FTCA claim bars a subsequent *Bivens* claim.").

And where the claims arise in separate lawsuits concerning the same subject matter, it does not matter which suit is filed first, because − as with res judicata − "the relevant inquiry … is which action resulted in judgment first, not which action was filed first." *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 416 (6th Cir. 2016) (citation omitted); *accord Will v. Hallock*, 546 U.S. 345, 354 (2005) ("Although the statutory judgment bar is arguably broader than traditional res judicata, it functions in much the same way, with both rules depending on a prior judgment as a condition precedent and neither reflecting a policy that a defendant

should be scot free of any liability." (footnote omitted).[5]

The Court should therefore reject Plaintiff's reasons for not applying Section 2676's judgment bar to his *Bivens* claims against Aguilar and Alvarado and grant their motion to apply the bar, mooting their motion to dismiss [Dkt. No. 172], and dismissing Counts XXII, XXIII, XX, XXII, XXIII, and XIV.

The Court should also act sua sponte to dismiss the FTCA claims based on the judgment in *Roe II*.

"Generally, res judicata must be pled as an affirmative defense" under Federal Rule of Civil Procedure 8(c)(1), but the first of "two limited exceptions" to that rule applies here and "permits '[d]ismissal by the court sua sponte on res judicata grounds ... in the interest of judicial economy where both actions were brought before the same court.'" *McIntyre v. Ben E. Keith Co.*, 754 F. App'x 262, 264-65 (5th Cir. 2018) (per curiam) (quoting *Mowbray v. Cameron Cnty.*, 274 F.3d 269, 281 (5th Cir. 2001)).

"The preclusive effect of a prior federal court judgment is controlled by federal res judicata rules." *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000) (citations omitted); *accord Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir. 1990). Those rules bar

"the litigation of claims that either have been litigated or should have

---

[5] *See also Will*, 546 U.S. at 354 ("[T]he judgment bar can be raised only after a case under the Tort Claims Act has been resolved in the Government's favor. If a *Bivens* action alone is brought, there will be no possibility of a judgment bar, nor will there be so long as a *Bivens* action against officials and a Tort Claims Act against the Government are pending simultaneously (as they were for a time here). In the present case, if [the plaintiff] had brought her *Bivens* action and no other, the agents could not possibly have invoked the judgment bar in claiming a right to be free of trial.").

> been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*,
> 428 F.3d 559, 571 (5th Cir. 2005). In the Fifth Circuit, res judicata is
> appropriate if four conditions are met: (1) the parties in the subsequent
> action are identical to, or in privity with, the parties in the prior action;
> (2) the judgment in the prior case was rendered by a court of competent
> jurisdiction; (3) there has been a final judgment on the merits; and (4)
> the same claim or cause of action is involved in both suits. *Id.*; *see also*
> *Ellis*, 211 F.3d at 937.

*Chalmers v. City of Dallas*, No. 3:14-cv-36-N, 2014 WL 7174289, at *6 (N.D. Tex. Dec.

16, 2014) (citation modified).

These conditions are easily met here: the parties are identical; this district

court entered a final judgment dismissing *Roe II* with prejudice for failure to state a

claim upon which relief may be granted; and this suit and *Roe II* are based on the

"'same nucleus of operative facts.'" *Chalmers*, 2014 WL 7174289, at *6 (quoting *Test*

*Masters*, 428 F.3d at 571); *see Test Masters*, 428 F.3d at 571 ("Under the transactional

test, a prior judgment's preclusive effect extends to all rights of the plaintiff with

respect to all or any part of the transaction, or series of connected transactions, out

of which the original action arose." (citing *Petro-Hunt, L.L.C. v. United States*, 365

F.3d 385, 395-96 (5th Cir. 2004))); *see also Snow Ingredients, Inc. v. SnoWizard, Inc.*,

833 F.3d 512, 522 (5th Cir. 2016) ("True res judicata bars recovery when a party seeks

to relitigate the same facts even when the party argues a novel legal theory." (citation

omitted)).

The Court should therefore deem moot the United States motion to dismiss

[Dkt. No. 181] and sua sponte dismiss with prejudice Counts XXX, XXXI, XXXII,

XXXIII, and XXXIV.

To the extent that Plaintiff disagrees with this sua sponte dismissal, a district

court may exercise its "inherent authority ... to dismiss a complaint on its own motion ... 'as long as the procedure employed is fair.'" *Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th Cir. 2008) (per curiam) (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (quoting, in turn, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)); citation omitted). The Fifth Circuit has "suggested that fairness in this context requires both notice of the court's intention to dismiss *sua sponte* and an opportunity to respond." *Id.* (quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007) (quoting, in turn, *Carroll*, 470 F.3d at 1177); internal quotation marks and brackets omitted). These findings, conclusions, and recommendations afford Plaintiff notice, and the period for filing objections to them affords him an opportunity to respond. *See, e.g.*, *Starrett v. U.S. Dep't of Defense*, No. 3:18-cv-2851-M-BH, 2018 WL 6069969, at *2 (N.D. Tex. Oct. 30, 2018) (citations omitted), *rec. accepted*, 2018 WL 6068991 (N.D. Tex. Nov. 20, 2018), *aff'd*, 763 F. App'x 383 (5th Cir.) (per curiam), *cert. denied*, 140 S. Ct. 142 (2019).

IV.    <u>Remaining Substantive Counts</u>

    **A.    Federal Law**

        •    <u>Count XVI</u>

Plaintiff alleges that Defendant Abel Flores violated his First Amendment right to free speech (specifically, to report a crime) and his Fourteenth Amendment right to due process when Flores "subjected [Plaintiff] to punitive confinement after [Plaintiff complained] of sexual assault two years earlier." Dkt. No. 156 at 80.

First, Plaintiff has not provided evidence that this defendant has been properly

served or waived service of process, so this claim should at least be dismissed without prejudice under Federal Rule of Civil Procedure 4(m).

But Plaintiff also has not alleged a plausible constitutional violation against Flores, based on the facts – not his own conclusions – provided: "[o]n or about December 28, 2017, without committing any jail infraction, Defendant Abel Flores placed Plaintiff in punitive administrative segregation after a jailer reported to Flores that Plaintiff refused to give up a bottom bunk[, even though, as also alleges, he had a bottom bunk pass]. Apparently, Flores used the incident as an opportunity to punish Plaintiff for the report of the November 25, 2015 sexual assault outcry against officer Roden." Dkt. No. 156, ¶ 145 (footnote omitted)).

- Count XVII

To the extent that liability depends on a municipal policy or practice, the undersigned has already recommended dismissal of this claim for the reasons stated above. And, to the extent that this claim (against Lt. Nolles) is based on a pepper spray event that occurred in December 2015, the undersigned has already recommended dismissal as time barred for the reasons explained above.

But, to the extent that the claim is alleged against John Doe Jailer and based on a pepper spray event that occurred in December 2017, *see* Dkt. No. 156, ¶¶ 147-49, Plaintiff has not provided evidence that this defendant has been properly served or waived service of process. And so this claim, as to John Doe Jailer, should also be dismissed without prejudice under Rule 4(m). And, to the extent that this claim is based on Plaintiff's conclusion that he was pepper sprayed in retaliation for his

reporting a sexual assault more than two years earlier, like above, he has not alleged a plausible constitutional violation against John Doe Jailer based on the nonconclusory facts asserted.

- Count XVIII

Plaintiff alleges that, on August 25, 2017, Bill Moore, the Johnson County Attorney, and Stuart Madison, a prosecutor in that office, caused a capias to be issued for his arrest without probable cause. *See* Dkt. No. 156, ¶¶ 253-62.

As applicable to Plaintiff's claim,

> [a] constitutional claim for false arrest … "requires a showing of no probable cause." Probable cause is established by "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."
>      In general, "[i]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."

*Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (citations omitted).

According to Moore and Madison,

> [b]oth the original Information and charge affidavit as well as the Magistrate's Warning were on file in Plaintiff's criminal case at the time the capias was issued, thus the requirements for a probable cause determination had been met. *See* App. 2-3, 5. Plaintiff has further admitted that his arrest on December 19, 2017 was pursuant to the capias ([Dkt. No. 156] at ¶¶ 141, 260), thus the officers who arrested Plaintiff were complying with a court order.

Dkt. No. 179 at 36.

The Court may take judicial notice of the state court record containing the magistrate's probable cause determination attached to Moore and Madison's motion

to dismiss. *See Stiel v. Heritage Numismatic Auctions, Inc.*, ___ F. App'x ____, No. 19-10961, 2020 WL 2769099, at \*3 (5th Cir. May 27, 2020) (per curiam) ("Federal Rule of Evidence 201 also authorizes the court to take judicial notice of 'adjudicative facts,' not legal determinations. We have allowed a 'district court to take judicial notice of the public records in ... prior state court proceedings.' Accordingly, the district court was allowed to take judicial notice of the state court's orders, final judgment, and docket as matters of public record attached to the motion to dismiss." (citations omitted)).

And doing so, the Court should dismiss Plaintiff's false arrest claim.

- • <u>Count XIX</u>

Related to Count XVIII, Plaintiff also alleges that, on December 19, 2017, Defendant Acklen "drafted a probable cause affidavit for a search warrant in which he made sworn statements, which amounted to deliberate falsehoods or reckless disregard for the truth, and that those deliberate falsehoods were necessary to the magistrate's probable cause determination." Dkt. No. 156, ¶ 264.

> [T]he initiating party may still be liable for false arrest "if the plaintiff shows that the 'deliberations of the intermediary were in some way tainted by the actions of the defendant.'" Chiefly relevant here, ... *Franks v. Delaware* established that even if an independent magistrate approves a warrant application, "a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth,' and (2) the allegedly false statement is necessary to the finding of probable cause."

*Arizmendi*, 919 F.3d at 897 (quoting *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017), then *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)); citation omitted).

While Plaintiff recites the legal requirements for a *Franks* claim, he provides no facts to support it. *See* Dkt. No. 156, ¶¶ 263-68. The claim is therefore not plausible, and it should be dismissed, as the Court need not "accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678.

## B.    State Law

While the motion to dismiss the second amended complaint filed by Defendant Rodney Cooper [Dkt. No. 236] is not yet ripe and not before the Court, the substantive claims remaining against the moving defendants are brought under state law: against Roden, related to the alleged November 2015 sexual assault (Count XXXV); against LaSalle, related to the alleged November 2015 sexual assault (Counts XXXVI, XXXVII, and XXXVII); and against Johnson County, for negligence, related to the alleged November 2015 sexual assault (Count XXXIX).

To determine whether it should "relinquish jurisdiction over pendent state law claims," a court looks to "statutory factors set forth by 28 U.S.C. § 1367(c)" – "(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction" – as well as "the common law factors of judicial economy, convenience, fairness, and comity" set forth by *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158-59 (5th Cir. 2011). As "no single factor is dispositive," *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008), "[t]he overall

balance of the statutory factors is important," *Enochs*, 641 F.3d at 159 (citation omitted).

"To prevent the limitations period on [dismissed] supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal court, § 1367(d) provides a tolling rule that must be applied by state courts." *Jinks v. Richland Cnty., S.C.*, 538 U.S. 456, 459 (2003); *see Scott v. Smith*, 214 F.3d 1349 (table), 2000 WL 633583, at *1 (5th Cir. Apr. 27, 2000) (per curiam) ("Scott has failed to demonstrate that the district court abused its wide discretion in dismissing the claims without prejudice rather than remanding them. In addition, Scott's concern regarding the statute of limitations is unfounded. *See* 28 U.S.C. § 1367(d)." (citation omitted)).

This case has not moved past the pleadings stage. These remaining claims turn on a potentially novel application of the Texas Tort Claims Act and the reach of Texas's expanded five-year statute of limitations where an injury arises as a result of sexual assault, Section 16.0045. And a district court does "not abuse its discretion by declining to exercise supplemental jurisdiction over [claims that] involve distinct questions of state law." *Lucky Tunes #3, L.L.C. v. Smith*, ___ F. App'x ____, No. 19-40970, 2020 WL 2114313, at *5 (5th Cir. May 1, 2020) (per curiam) (citation omitted).

So, depending on the outcome of Defendant Cooper's motion to dismiss – that is, should the Court dismiss all federal claims against him – the undersigned is inclined to recommend that the Court decline to assert jurisdiction over these pendent state law claims (and any remaining against Defendant Cooper) but, for now, recommends that the Court should defer its decision over these claims.

**Recommendation**

The Court (1) should grant the motions to dismiss filed by Defendants Johnson County, Texas, Sheriff Bob Alford, Sheriff Adam King, David Blankenship, Bill Moore, Stu Madison, and Jeffrey Acklen [Dkt. No. 179]; Defendant Phillip Roden [Dkt. No. 187]; Defendants Southwestern Correctional, LLC d/b/a LaSalle Corrections, LLC d/b/a LaSalle Southwest Corrections and LaSalle Management Company, LLC's [Dkt. No. 189]; Defendants Eddie Williams and Robert [Dkt. No. 190] to the extent that the Court should dismiss the federal claims with prejudice but defer its decision on the state law claims; (2) should grant Defendants Jacob Aguilar and Ivan Alvarado's motion to apply the "judgment bar" pursuant to the Federal Tort Claims Act ("FTCA") [Dkt. No. 217]; (3) should sua sponte dismiss the FTCA claims against the United States based on res judicata; and (4) should moot the motions to dismiss filed by Defendants Aguilar, Alvarado, and the United States [Dkt. Nos. 172 & 181].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: July 31, 2020

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE