UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHN ROE,                                        §
                                                 §
                Plaintiff,                        §
                                                 §
V.                                               §        No. 3:18-cv-2497-B-BN
                                                 §
JOHNSON COUNTY, TEXAS, ET AL.,                   §
                                                 §
                Defendants.                       §

## MEMORANDUM OPINION AND ORDER

Plaintiff, then still proceeding *pro se*, filed a second amended complaint, asserting 40 separate causes of action. *See* Dkt. No. 156. After counsel appeared for Plaintiff, *see* Dkt. No. 159, Plaintiff elected not to accept United States Magistrate Judge David L. Horan's invitation to move for leave to file a third amended complaint, which would, presumably, have been prepared with the assistance of counsel. *See* Dkt. Nos. 160 & 163.

Multiple defendants then filed motions directed at the second amended complaint: Defendants Jacob Aguilar and Ivan Alvarado moved to dismiss, *see* Dkt. No. 172; Defendants Johnson County, Texas, Sheriff Bob Alford, Sheriff Adam King, David Blankenship, Bill Moore, Stu Madison, and Jeffrey Acklen moved to dismiss, *see* Dkt. Nos. 179 & 180; Defendant United States of America moved to dismiss, *see* Dkt. Nos. 181 & 182; Defendant Phillip Roden moved to dismiss, *see* Dkt. No. 187; Defendants Southwestern Correctional, LLC d/b/a LaSalle Corrections, LLC d/b/a LaSalle Southwest Corrections and LaSalle Management Company, LLC ("LaSalle") moved to dismiss, *see* Dkt. No. 189; Defendant Eddie Williams and Robert Matson moved to dismiss, *see* Dkt. No. 190; and Defendants Aguilar and Alvarado also moved the Court to apply the "judgment bar" pursuant to the Federal Tort Claims Act ("FTCA"), *see* Dkt. No. 217.

On July 31, 2020, Judge Horan entered findings of fact and conclusions of law recommending that the Court grant certain motions to dismiss to the extent that the Court should dismiss the federal claims with prejudice and defer (for now) its ruling on certain state law claims and that the Court should grant the motion to apply the FTCA's judgment bar, *sua sponte* dismiss the FTCA claims against the United States based on res judicata, and therefore moot the federal defendants' motions to dismiss [Dkt. No. 253] (the "FCR").

Plaintiff first responded by moving (unopposed) to dismiss four of the five state law claims without prejudice: Counts 35, 36, 37, and 38. *See* Dkt. No. 255.

Plaintiff then filed objections [Dkt. No. 261], asserting 12 specific points of error but also broadly requesting that the Court ignore the 43-page FCR and instead "review[] the entire record de novo and make findings of fact independent of those made" in the FCR. *Id.* at 40.

The Court declines this invitation. As Plaintiff was advised in the FCR, "[a]ny party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found." Dkt. No. 253 at 42 (citations omitted). But the Court has closely considered Plaintiff's specific objections, *see, e.g.*, FED. R. CIV. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."), and has reviewed the remaining FCR for plain error.

The Court also rejects Plaintiff's assertion that his second amended complaint should be given additional leniency because it was drafted *pro se*. *See* Dkt. No. 261 at 40. Judge Horan

recognized this concern when counsel appeared on Plaintiff's behalf after the filing of the second amended complaint. But Plaintiff elected to stand on his *pro se* second amended complaint and chose not to propose a third amended complaint at that time.

Defendants Aguilar, Alvarado, LaSalle, and Roden responded to Plaintiff's objections. *See* Dkt. Nos. 262, 263, & 264. And Plaintiff filed replies, *see* Dkt. Nos. 265 & 266, as allowed by the Court's local rules, *see* N.D. Tex. L. Civ. R. 72.2.

The Court, after considering the objections, the responses, and the replies, and having reviewed the FCR *de novo* or for plain error, as applicable, now **ORDERS** the following:

Several of Plaintiff's specific objections concern claims that he has made against multiple defendants, including the individual federal defendants, Aguilar and Alvarado. And Plaintiff specifically objects that it was error to apply the FTCA judgment bar to dismiss the claims against Aguilar and Alvarado. The Court has carefully reviewed the application of 28 U.S.C. § 2676 in this case and—for the reasons explained in the FCR, at pages 32-34—agrees with Judge Horan that Section 2676 does apply to bar Plaintiff's *Bivens* claims against Aguilar and Alvarado. The Court therefore **OVERRULES** this objection and turns to Plaintiff's other specific objections, with no need to address those objections to the extent that they concern claims against Aguilar and Alvarado.

Plaintiff first asserts that fraudulent concealment tolls his substantive due process claim against Defendant Roden based on his allegations that Roden sexually assaulted him [Counts 3 and 4]. But fraudulent concealment only tolls limitations until the claimant, using reasonable diligence, discovered or should have discovered the injury. Based on Plaintiff's allegations, he knew of his injuries at the time he was allegedly sexually assaulted, so fraudulent concealment does not apply to these claims. The Court therefore **OVERRULES** this objection.

Plaintiff next argues that his Fourth Amendment claims Defendants Blankenship, Aguilar, and Alvarado [Counts 13 and 23] are entitled to delayed accrual. As explained above, the Court will focus on these objections to the extent they concern claims against Blankenship.

First, Count 13 is based on a theory of false arrest, a Fourth Amendment claim that may be made (and is commonly made) prior to the conclusion of criminal proceedings. *See, e.g.*, *Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 392 (5th Cir. 2020) ("In *Wallace[ v. Kato*, 549 U.S. 384, 393 (2007), the Supreme Court rejected the argument that, because of *Heck[ v. Humphrey*, 512 U.S. 477 (1994)], accrual could not occur until there was a favorable termination of criminal charges, reasoning that 'the impracticality of' a 'rule' that 'an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside ... should be obvious.'").

There were two arrests in this case. As to the latter, in December 2017, Plaintiff admits in his complaint that the arrest was pursuant to a capias issued by the state prosecutor in Johnson County. So the Court will focus on the December 2015 arrest.

Plaintiff alleges that his claims concerning this arrest are timely because, although he was arrested on December 2, 2015, he was not arraigned prior to his transfer to immigration custody and his release from that custody, and he contends that "legal process" did not commence until April 2018, when a court found that his arrest was not supported by probable cause.

But Plaintiff's reliance on "legal process" to support the timeliness of a Fourth Amendment claim based on a false arrest theory is misplaced. "Legal process commences when 'a judge (or grand jury) first makes a reliable finding of probable cause.'" *Garcia v. San Antonio, Tex.*, 784 F. App'x 229, 232 (5th Cir. 2019) (per curiam) (quoting *Manuel v. City of Joliet*, 137 S. Ct. 911, 919 (2017) (citing, in turn, *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975))). As Plaintiff alleges—for example, based

-4-

on trial transcripts attached to his second amended complaint—his December 2015 arrest was effectively made without a warrant. *See* Dkt. No. 156-3 at 5-6 (in which the state court found "that [Blankenship's] affidavit is conclusory in nature and does not establish probable cause; therefore, the situation is analogous to an arrest warrant affidavit that does not establish probable cause").

> Arrests made without arrest warrants can be lawful, but they are not made subject to "legal process" under [the] definition [set out above]. The Supreme Court's decision in *Manuel* supports this conclusion. There, the Court considered the claims of a petitioner who was arrested without a warrant after a search of his person uncovered allegedly illicit pills. *Manuel*, 137 S. Ct. at 919. Though the arrest may not have required a warrant, legal process did not kick in until the petitioner appeared before a magistrate judge. *Id.* at 919-20; *cf. Winfrey v. Rogers*, 901 F.3d 483, 492-93 (5th Cir. 2018) (holding that an arrest supported by an arrest warrant commenced legal process because the warrant was premised on a judge's probable cause finding).

*Garcia*, 784 F. App'x at 232

As with Garcia's false arrest-based claim, Plaintiff's accrued when he was arrested. As with both, the timeliness of the false arrest-based claim did not turn on when legal process commenced. The Court therefore **OVERRULES** this objection. For similar reasons, the Court also **OVERRULES** Plaintiff's objection concerning the timeliness of his punitive segregation claim [Count 15], which also accrued when he was arrested on December 2, 2015.

The remainder of Plaintiff's Fourth Amendment claim against Defendant Blankenship—under theories of at least false imprisonment and malicious prosecution—more directly implicates Plaintiff's subsequent prosecution for making a false report to a peace officer, which ended with a jury finding him not guilty in 2018.

While the United States Court of Appeals for the Fifth Circuit

has held that although there is no "freestanding constitutional right to be free from malicious prosecution," "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the

Fourth Amendment if the accused is seized and arrested, for example." *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Cir. 2003) (en banc). In *Albright v. Oliver*, 510 U.S. 266 (1994), a plurality of the Supreme Court said that malicious-prosecution claims must be based on the Fourth Amendment, rather than on "the more generalized notion of 'substantive due process,'" because the Fourth Amendment is the explicit textual source against this type of government behavior. *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). And recently, in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), the Supreme Court considered whether a plaintiff had stated a Fourth Amendment claim when he was arrested and charged with unlawful possession of a controlled substance based upon false reports written by a police officer and an evidence technician. *Id.* at 915. There, the Court said the plaintiff's "claim fits the Fourth Amendment, and the Fourth Amendment fits [the plaintiff's] claim, as hand in glove." *Id.* at 917. And it held "that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Id.* at 920.

*Winfrey*, 901 F.3d at 491-92; *see also Morgan v. Chapman*, 969 F.3d 238, 245-46 (5th Cir. 2020) ("In *Castellano v. Fragozo*, an en banc majority of this court extinguished the constitutional malicious-prosecution theory. 352 F.3d 939, 954 (5th Cir. 2003) (en banc). *Castellano* explained that claims under § 1983 are only "for violation[s] of rights locatable in constitutional text." *Id.* at 953-54. This makes sense: the people have a constitutional right to be free from unreasonable searches and unreasonable seizures. In so far as the defendant's bad actions (that happen to correspond to the tort of malicious prosecution) result in an unreasonable search or seizure, those claims may be asserted under § 1983 as violations of the Fourth Amendment. But that makes them Fourth Amendment claims cognizable under § 1983, not malicious prosecution claims."); *Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018) ("After [the Supreme Court's decision in] *Manuel*, 'Fourth Amendment malicious prosecution' is the wrong characterization. There is only a Fourth Amendment claim—the absence of probable cause that would justify the detention. 137 S. Ct. at 917-20. The problem is the wrongful custody. '[T]here is no such thing as a constitutional right not to be prosecuted without probable cause.' *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013). But

there is a constitutional right not to be held in custody without probable cause. Because the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of the detention.").

Plaintiff has alleged that Blankenship's actions resulted in his being seized without probable cause, and he has alleged that this seizure continued after he was released from pretrial custody. *See, e.g.*, Dkt. No. 156, ¶ 104 ("After spending 12 days in the criminal section of the jail, Plaintiff's wife posted cash bail in the amount of $1000.00 dollars on behalf of the Plaintiff. The bond condition imposed certain restrictive conditions, including requiring that the Plaintiff not travel outside the State of Texas and that he appear for all scheduled court hearings."); *compare id.*, *with, e.g.*, *McLin v. Ard*, 866 F.3d 682, 693-94 (5th Cir. 2017) ("If[ a] summons or citation is accompanied by more burdensome restrictions—such as restrictions on out-of-state travel and pre-trial reporting requirements—some courts, including this one, have recognized that a seizure may occur incident to a pre-trial release." (citations omitted)). And, to the extent that Plaintiff has alleged that he remained seized until he was tried and found not guilty (or at same point prior, but still close, to the conclusion of those proceedings in 2018), this Fourth Amendment claim is not time barred. *See, e.g.*, *Manuel*, 903 F.3d at 670 ("The wrong of detention without probable cause continues for the duration of the detention. That's the principal reason why the claim accrues when the detention ends.").

The Court—accepting Plaintiff's factual allegations as true, as it must at this stage—therefore finds that, although Plaintiff has failed to concisely plead his allegations in this case, the second amended complaint does seem to contain a plausible Fourth Amendment claim against Defendant Blankenship based on a theory of malicious prosecution, which would have "accrued when [Plaintiff's] criminal proceedings ended in his favor," *Winfrey*, 901 F.3d at 493, and would therefore

be timely. *Cf. id.* (finding that [the plaintiff's Fourth Amendment] claim is more like the tort of malicious prosecution [than false imprisonment], because [he] was arrested through the wrongful institution of legal process: an arrest pursuant to a warrant, issued through the normal legal process, that is alleged to contain numerous material omissions and misstatements. [The plaintiff] thus alleges a wrongful institution of legal process—an unlawful arrest *pursuant* to a warrant—instead of a detention with no legal process").

    This determination implicates Plaintiff's objections related to Count 20 (for civil conspiracy, in violation of the constitution); Count 22 (for fabrication of evidence, in violation of constitutional due process); and Count 24 (for retaliatory prosecution, in violation of the constitution), all alleged against Blankenship and the individual federal defendants. These claims all seem related to the Fourth Amendment claim proceeding under a theory of malicious prosecution. *See, e.g.*, *McDonough v. Smith*, 129 S. Ct. 2149, 2156 (2019) ("[T]his Court often decides accrual questions by referring to the common-law principles governing analogous torts. These 'principles are meant to guide rather than to control the definition of § 1983 claims,' such that the common law serves '"more as a source of inspired examples than of prefabricated components."' Relying on our decision in *Heck*, McDonough analogizes his fabricated-evidence claim to the common-law tort of malicious prosecution, a type of claim that accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor. McDonough is correct that malicious prosecution is the most analogous common-law tort here. Common-law malicious prosecution requires showing, in part, that a defendant instigated a criminal proceeding with improper purpose and without probable cause. The essentials of McDonough's claim are similar: His claim requires him to show that the criminal proceedings against him—and consequent deprivations of his liberty—were caused by Smith's

malfeasance in fabricating evidence. At bottom, both claims challenge the integrity of criminal prosecutions undertaken 'pursuant to legal process.'" (citations and footnotes omitted)).

And to the extent that these claims as made against Blankenship are different expressions of the Fourth Amendment claim proceeding under a theory of malicious prosecution ***and*** are based on the Fourth Amendment or some other explicit textual source in the Constitution, the Court will allow these claims to proceed but otherwise **OVERRULES** Plaintiff's objections.

Plaintiff next objects to Judge Horan's analysis concerning the accrual of his deliberate indifference claim against Defendants Matson and Blankenship [Count 5]. This claim is based on how these defendants treated or responded to Plaintiff after he reported sexual assault allegations in 2015. And Plaintiff contends that equitable tolling applies because it was not until his trial in 2018 that he learned facts that he believes support this claim. For example, Plaintiff contends that Blankenship told him in 2015 that Defendant Roden neither worked nor possessed a duty pistol on the day of the alleged assault, while Roden testified in 2018 that he did work and was armed on the day Plaintiff reports he was sexually assaulted. But Plaintiff's contentions do not support equitable tolling—even if Plaintiff had acted diligently, "the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016); *see, e.g., Farmer v. D&O Contractors*, 640 F. App'x 302, 307 (5th Cir. 2016) (per curiam) (Because "the FBI did not actually prevent Farmer or any other Plaintiff from filing suit" but instead "advised Farmer that filing suit would have been against the FBI's interest" and "that the RICO claims could be filed after the investigation concluded," "[a]ny obstacle to suit was ... the product of Farmer's mistaken reliance on the FBI, and a party's mistaken belief is not an extraordinary circumstance" (citing *Menominee*

*Indian Tribe*, 136 S. Ct. at 756-57)).

Plaintiff next argues that neither his claim under the Alien Tort Statute, 28 U.S.C. § 1350 (the "ATS") [Count 29] nor his ratification claim [Count 25] is time barred and that it was error to recommend dismissal of his various official capacity claims.

First, "[a]lthough the [ATS] 'provides district courts with jurisdiction to hear certain claims,' it 'does not expressly provide any causes of action.' Rather, the ATS provides jurisdiction for a 'modest number of international law violations' that are derived from federal common law." *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 192 (5th Cir. 2017) (citations omitted). Ratification itself—particularly as used in the second amended complaint, *see* Dkt. No. 156, ¶¶ 307-12 (alleging that Johnson County and municipal policymakers ratified Blankenship's actions)—is also not an independent cause of action. Instead, ratification is a theory of municipal liability, "limited to 'extreme factual situations.'" *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017) (quoting *World Wide Street Preachers Fellowship v. Twn. of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)). Judge Horan found that the facts alleged in the second amended complaint fail to show municipal liability under this theory. The Court agrees. These objections are therefore **OVERRULED**.

The Court also finds no merit in Plaintiff's objection concerning the dismissal of official capacity claims. This is objection is therefore also **OVERRULED**.

Plaintiff finally asserts that Judge Horan improperly considered documents outside of the pleadings. But the FCR's consideration of Claim 28 was properly. And the Court **OVERRULES** this objection.

In sum, the Court, having reviewed *de novo* those portions of the proposed findings,

conclusions, and recommendation to which objection was made, and having reviewed the remaining proposed findings, conclusions, and recommendation for plain error, and finding none, **ACCEPTS IN PART** the Findings, Conclusions, and Recommendation of the United States Magistrate Judge [Dkt. No. 253]. The FCR is accepted in full except as to the recommendation that the Court dismiss a Fourth Amendment claim (or related constitutional claims) against Defendant David Blankenship related to the alleged seizure of Plaintiff without probable cause.

The Court therefore **GRANTS** the motions to dismiss filed by Defendant Phillip Roden [Dkt. No. 187]; Defendants Southwestern Correctional, LLC d/b/a LaSalle Corrections, LLC d/b/a LaSalle Southwest Corrections and LaSalle Management Company, LLC's [Dkt. No. 189]; Defendants Eddie Williams and Robert Matson [Dkt. No. 190] to the extent that the Court **DISMISSES** the federal claims with prejudice; **GRANTS IN PART** the motion to dismiss filed by Defendants Johnson County, Texas, Sheriff Bob Alford, Sheriff Adam King, David Blankenship, Bill Moore, Stu Madison, and Jeffrey Acklen [Dkt. No. 179] to the extent that the Court **DISMISSES** all federal claims with prejudice except a Fourth Amendment claim (or related constitutional claims) against Defendant David Blankenship related to the alleged seizure of Plaintiff without probable cause; **GRANTS** Defendants Jacob Aguilar and Ivan Alvarado's motion to apply the "judgment bar" pursuant to the Federal Tort Claims Act [Dkt. No. 217]; **DISMISSES** the FTCA claims against the United States based on res judicata; and **DENIES AS MOOT** the motions to dismiss filed by Defendants Aguilar, Alvarado, and the United States [Dkt. Nos. 172 & 181].

The Court further **GRANTS** the unopposed motion to dismiss without prejudice the state law claims in Counts 35, 36, 37, and 38 [Dkt. No. 255].

The matter remains referred to Judge Horan for pretrial management. But the Court does

-11-

observe that—while it would premature to require that Plaintiff file a third amended complaint solely against Defendant Blankenship now, considering that the motion to dismiss the second amended complaint filed by Defendant Rodney Cooper [Dkt. No. 236], was not ripe at the time the FCR was entered (and remains pending)—given the confusing state of the current operative complaint, an amended complaint limited to the live claims does seem necessary at some point in the near future. *Cf. Morgan*, 969 F.3d at 248 ("Morgan is correct that under our system of notice pleading, a complaint need not specify legal theories. But that is not the only principle at play here. A defendant is also entitled to know the claims against him so that he can prepare a response." (citation omitted)).

   SO ORDERED.

   DATED: September 15, 2020.

                    _____

                    JANE J. BOYLE
                    UNITED STATES DISTRICT JUDGE