IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN ROE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-2497-B-BN |
| | § | |
| JOHNSON COUNTY, TEXAS, ET AL. | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This lawsuit brought by a plaintiff who identifies by the pseudonym John Roe, a former immigration and then state pretrial detainee, was referred to the undersigned United States magistrate judge under 28 U.S.C. § 636(b) and an order of reference from United States District Judge Jane J. Boyle. *See* Dkt. No. 8.

The undersigned need not repeat this lawsuit's lengthy procedural history because the matters now before the Court stem from the September 15, 2020 order granting multiple motions by numerous defendants directed toward the second amended complaint [Dkt. No. 156] (the SAC) and dismissing all of Plaintiff's claims against those defendants except for a Fourth Amendment claim (or related constitutional claims) against Defendant David Blankenship concerning the alleged seizure of Plaintiff without probable cause. *See Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2020 WL 6576784 (N.D. Tex. July 31, 2020), *rec. accepted in part*, 2020 WL 5542333 (N.D. Tex. Sept. 15, 2020).

The United States Court of Appeals for the Fifth Circuit then reached a similar

conclusion in a parallel case that Plaintiff filed in this district under the Federal Tort Claims Act (FTCA), affirming the dismissal by another judge of this Court of all of Plaintiff's claims except for his malicious prosecution claim and related claim of conspiracy, finding that the malicious prosecution claim accrued on the date that Plaintiff was found not guilty on a false-report charge. *See Roe v. United States*, 839 F. App'x 836 (5th Cir. 2020) (per curiam).

In between these decisions, Blankenship – who, in November and December 2015, investigated Plaintiff's allegations of sexual assault and determined that there was probable cause to arrest Plaintiff for making a false report – answered the SAC, *see* Dkt. No. 276, asserting, as an affirmative defense, "his entitlement to qualified/official immunity for the allegations made the basis of the [SAC]," *id.* at 23. Blankenship next filed a court-ordered motion for summary judgment on qualified immunity. *See* Dkt. Nos. 278-81. The Court denied Plaintiff leave to conduct limited discovery in order to respond to the qualified immunity issues raised on summary judgment. *See Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2021 WL 197427 (N.D. Tex. Jan. 20, 2021), *aff'd*, 2021 WL 321967 (N.D. Tex. Feb. 1, 2021). Plaintiff then responded to the summary judgment motion. *See* Dkt. Nos. 295-98. And Blankenship replied. *See* Dkt. No. 306.

And, after the Fifth Circuit's decision in *Roe v. United States*, Plaintiff moved the Court to reconsider its September 15, 2020 interlocutory order under Federal Rule of Civil Procedure 54(b). *See* Dkt. No. 302. Responses were filed. *See* Dkt. Nos. 307, 308, 312. And Plaintiff replied. *See* Dkt. Nos. 313-15.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant Blankenship's motion for summary judgment on qualified immunity, grant in part and deny in part Plaintiff's motion for reconsideration, and enter judgment dismissing this case with prejudice.

## Legal Standards

### I.   Qualified Immunity

"A plaintiff makes out a [42 U.S.C.] § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law,'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

"But government officials performing discretionary duties" can respond to such a claim by asserting qualified immunity. *Id.* at 294 (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)).

If they do, a court must consider each official's actions separately, *see Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007), on an expedited basis, *see Ramirez v. Guadarrama*, ___ F.4th ____, No. 20-10055, 2021 WL 2637199, at *2 (5th Cir. Feb. 8, 2021) (per curiam) ("Because qualified immunity is an *immunity from suit*, not merely a defense to liability, 'it is effectively lost if a case is erroneously permitted to go to trial.' It is for this reason that a denial of qualified immunity is immediately appealable and that a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation. This scheme prevents a defendant entitled to immunity from being compelled to bear the costs of discovery

and other pre-trial burdens." (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985);

citations omitted)).[1]

> [T]he doctrine of qualified immunity attempts to balance two competing
> societal interests: "the need to hold public officials accountable when
> they exercise power irresponsibly and the need to shield officials from
> harassment, distraction, and liability when they perform their duties
> reasonably." These interests are distilled into a legal standard, an
> affirmative defense, that shields public officials sued in their individual
> capacities "from liability for civil damages insofar as their conduct does
> not violate clearly established statutory or constitutional rights of which
> a reasonable person would have known."

*Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Pearson v. Callahan*,

555 U.S. 223, 231 (2009), then *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Phrased differently, this immunity "attaches when an official's conduct 'does

not violate clearly established statutory or constitutional rights of which a reasonable

person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)

(quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).

The doctrine therefore "gives government officials breathing room to make

reasonable but mistaken judgments, and protects all but the plainly incompetent or

those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per

curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); internal quotation

marks omitted); *accord City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611

---

[1] *See also Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) ("[B]ecause
qualified immunity is 'not simply immunity from monetary liability' but also
'immunity from having to stand trial,' there is an interest in qualified immunity
entering a lawsuit 'at the earliest possible stage of litigation.'" (quoting *Westfall v.
Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting, in turn, *Brown v. Glossip*, 878
F.2d 871, 874 (5th Cir. 1989)))).

(2015). "'Accordingly, "qualified immunity represents the norm," and courts should deny a defendant immunity only in rare circumstances.'" *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting, in turn, *Harlow*, 457 U.S. at 807)); *but see, e.g., Jamison v. McClendon*, 476 F. Supp. 3d 386 (S.D. Miss. 2020) (calling for reconsideration of the doctrine).

The "qualified-immunity inquiry is two-pronged." *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (citing *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)).

- Do "the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right"? *Id.* at 190-91 (citing *Garcia*, 957 F.3d at 600)

- Was "the right at issue [] 'clearly established' at the time of the alleged misconduct"? *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (cleaned up; quoting *Pearson*, 555 U.S. at 232).

"In order for a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ramirez*, 2021 WL 2637199, at *2 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus merged into one issue for purposes of the qualified immunity analysis." *Id.*; *cf. Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) ("Fair notice requires clearly established law. That is, the law must 'clearly prohibit the officer's conduct in the particular circumstances before him' so 'every reasonable official' knows not to engage in that conduct." (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018); citing *al-Kidd*, 563 U.S.

at 742)).

Under this standard, "'[q]ualified immunity is justified unless no reasonable officer could have acted as [the defendant officers] did here, or every reasonable officer faced with the same facts would not have [acted as the defendant officers did].'" *Tucker v. City of Shreveport*, 998 F.3d 165, 174 (5th Cir. 2021) (quoting *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019) (citing, in turn, *Wesby*, 138 S. Ct. at 590 ("It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know."))).

A court may "'analyze the prongs in either order or resolve the case on a single prong.'" *Cunningham*, 983 F.3d at 191 (quoting *Garcia*, 957 F.3d at 600). But addressing this affirmative defense on a motion for summary judgment is not exactly intuitive.

"A plaintiff suing for a constitutional violation has the ultimate burden to show that the defendant violated a constitutional right … whether or not qualified immunity is involved." *Joseph*, 981 F.3d at 329 (footnote omitted).

But, "[w]hen a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" *Id.* at 329-30 (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)); *accord Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) ("The defense of qualified immunity 'alters the usual

summary judgment burden of proof.' Once a defendant properly raises the defense, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense's protection." (citations omitted)). "In other words, to shift the burden to the plaintiff, the public official need not show (as other summary-judgment movants must) an absence of genuine disputes of material fact and entitlement to judgment as a matter of law." *Joseph*, 981 F.3d at 330 (citing *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016)).

Once shifted, "the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (per curiam) (citation omitted). And, "[t]o rebut [a public official's] qualified immunity defense, a plaintiff must point to summary judgment evidence '(1) that [the official] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (cleaned up).

As to the first prong of the qualified-immunity inquiry, to overcome a public official's motion for summary judgment on qualified immunity, the plaintiff "must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury" – just as would be required "if the plaintiff did not face qualified immunity." *Joseph*, 981 F.3d at 330. That is, the plaintiff must defeat summary judgment by showing that "the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right," *Cunningham*, 983 F.3d at 190-91.

When considering this showing, the Court must "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). But the Court need not do so if the plaintiff's "version 'is blatantly contradicted by the record, so that no reasonable jury could believe it.'" *Joseph*, 981 F.3d at 325 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); citing *Orr*, 844 F.3d at 590).

When accepting the plaintiff's well-supported version of the disputed facts, the Court must "view the facts and draw reasonable inferences in the light most favorable to" the plaintiff. *Id.* (footnote omitted). And, particularly applicable in *pro se* cases, "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence." *Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)); *see, e.g.*, *Mitchell v. Cervantes*, 453 F. App'x 475, 477-78 (5th Cir. 2011) (per curiam).

But "the plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Joseph*, 981 F.3d at 330. So, "when qualified immunity is involved, at least in this circuit, a plaintiff has the additional burden to show that the violated right was 'clearly established' at the time of the alleged violation." *Id.* at 329 (footnote omitted).

And "[t]he 'clearly established' prong is difficult to satisfy." *Cunningham*, 983 F.3d at 191; *see also Cope v. Cogdill*, ___ F.4th ____, No. 19-10798, 2021 WL 2767581, at *3 (5th Cir. July 2, 2021) ("We are bound by the restrictive analysis of 'clearly established' set forth in numerous [United States] Supreme Court precedents.").

The plaintiff "must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Batyukova*, 994 F.3d at 726 (quoting *Mullenix*, 577 U.S. at 11). And "[t]here are two ways to demonstrate clearly established law" and meet this additional burden to make this second showing. *Id.*

The first approach "requires the plaintiff to 'identify a case' – usually, a 'body of relevant case law' – in which 'an officer acting under similar circumstances ... was held to have violated the [Constitution]," *Joseph*, 981 F.3d at at 330 (footnote omitted); *accord Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (A clearly established right must be supported by "'controlling authority – or a "robust consensus of [cases of] persuasive authority" – that defines the contours of the right in question with a high degree of particularity.'" (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011))); *see also Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017) ("While we may look to other circuits to find clearly established law, we must consider 'the overall weight' of such authority. A 'trend' alone is just that. As of December 2013, only two circuits had weighed in on the 'contours of the right.' These cases alone do not provide sufficient authority to find that the law was clearly established." (footnote omitted)).

"It is the plaintiff's burden to find a case in [her] favor that does not define the law at a 'high level of generality.'" *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (cleaned up; quoting *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting, in turn, *Cass v. City of Abilene*, 814 F.3d 721, 733 (5th

Cir. 2016))). Thus, the "clearly established law" "must be 'particularized' to the facts of the case." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (cleaned up; quoting *White*, 137 S. Ct. at 552 (quoting, in turn, *al–Kidd*, 563 U.S. at 742)). And a clearly established right must be defined "'with specificity.'" *Cunningham*, 983 F.3d at 191 (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam)).

"This rule is a 'demanding standard.'" *Id.* (quoting *Wesby*, 138 S. Ct. at 589). And "'[a]bstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case.'" *Nerio*, 974 F.3d at 575 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

"While there need not be 'a case directly on point,' the unlawfulness of the challenged conduct must be 'beyond debate.'" *Joseph*, 981 F.3d at 330 (footnotes omitted); *accord Tucker*, 998 F.3d at 173-74 ("For conduct to be objectively unreasonable in light of clearly established law, there need not be a case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted); citing *Mullenix*, 577 U.S. at 14)).

"'The central concept is that of "fair warning": The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"" *Trammell v.*

*Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (quoting, in turn, *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc))).

"In other words, 'there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful.'" *Cunningham*, 983 F.3d at 191 (quoting *Vincent*, 805 F.3d at 547).

Under the second approach to demonstrating clearly established law, a plaintiff asks the Court to look to "the 'rare' possibility that, in an 'obvious case,' analogous case law 'is not needed' because 'the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Joseph*, 981 F.3d at 330 (quoting *Wesby*, 138 S. Ct. at 590); *accord Batyukova*, 994 F.3d at 726. "[I]n an obvious case, general standards can [therefore] 'clearly establish' the answer, even without a body of relevant case law." *Roque*, 993 F.3d at 335 (cleaned up; quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). But "[t]he standard for obviousness is sky high." *Joseph*, 981 F.3d at 338. And "plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious.'" *Cope*, 2021 WL 2767581, at *4 (quoting *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (per curiam)).

II.     Reconsideration of an Interlocutory Order

Rule 54(b) "authorizes the district court to 'revise[ ] at any time' 'any order or other decision ... that does not end the action.'" *Taylor v. Denka Performance Elastomer LLC*, Civ. A. No. 17-7668, 2018 WL 1010186, at *2 (E.D. La. Feb. 22, 2018)

(quoting FED. R. CIV. P. 54(b); citing *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) ("Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) (citing FED. R. CIV. P. 54(b)), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1995) (en banc)))); *see also Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 950 (N.D. Tex. 2014) ("'Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court[,]'" which should "determine 'whether reconsideration is necessary under the circumstances.'" (citations omitted)).

The "flexible" nature of Rule 54(b) therefore "reflect[s] the 'inherent power of the rendering district court to afford such relief from interlocutory [orders] as justice requires.'" *Austin*, 864 F.3d at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)).

### Analysis

I.   Because Plaintiff has not demonstrated that Blankenship is not entitled to qualified immunity on the remaining claims against him, the Court should grant the motion for summary judgment and dismiss the remaining claims against Blankenship with prejudice.

The claims against Blankenship that remain after the September 15, 2020 order are limited to "a Fourth Amendment claim (or related constitutional claims) … related to the alleged seizure of Plaintiff without probable cause." *Roe*, 2020 WL 5542333, at *6. More specifically,

Plaintiff has alleged that Blankenship's actions resulted in his being seized without probable cause, and he has alleged that this seizure continued after he was released from pretrial custody. *See, e.g.*, Dkt. No. 156, ¶ 104 ("After spending 12 days in the criminal section of the jail, Plaintiff's wife posted cash bail in the amount of $1000.00 dollars on behalf of the Plaintiff. The bond condition imposed certain restrictive conditions, including requiring that the Plaintiff not travel outside the State of Texas and that he appear for all scheduled court hearings."); *compare id.*, *with, e.g.*, *McLin v. Ard*, 866 F.3d 682, 693-94 (5th Cir. 2017) ("If[ a] summons or citation is accompanied by more burdensome restrictions – such as restrictions on out-of-state travel and pre-trial reporting requirements – some courts, including this one, have recognized that a seizure may occur incident to a pre-trial release." (citations omitted)). And, to the extent that Plaintiff has alleged that he remained seized until he was tried and found not guilty (or at same point prior, but still close, to the conclusion of those proceedings in 2018), this Fourth Amendment claim is not time barred. *See, e.g.*, *Manuel v. City of Joliet, Ill.*, 903 F.3d 667, 670 (7th Cir. 2018) ("The wrong of detention without probable cause continues for the duration of the detention. That's the principal reason why the claim accrues when the detention ends.").

*Id.* (citation modified).

Accepting the SAC's well-pleaded allegations, the Court therefore concluded: "[A]lthough Plaintiff has failed to concisely plead his allegations in this case, the second amended complaint does seem to contain a plausible Fourth Amendment claim against Defendant Blankenship based on a theory of malicious prosecution, which would have 'accrued when [Plaintiff's] criminal proceedings ended in his favor.'" *Id.* at *4 (quoting *Winfrey v. Rogers*, 901 F.3d 483, 493 (5th Cir. 2018)); *see also id.* ("This determination implicates Plaintiff's objections related to Count 20 (for civil conspiracy, in violation of the constitution); Count 22 (for fabrication of evidence, in violation of constitutional due process); and Count 24 (for retaliatory prosecution, in violation of the constitution) …. These claims all seem related to the Fourth Amendment claim proceeding under a theory of malicious prosecution." (citation

omitted)).

Generally speaking, then, the abstract constitutional rights at issue are: (1) that a defendant's arrest not supported by probable cause violates the Fourth Amendment and (2) that the initiation of criminal charges without probable cause (or with fabricated evidence) violates the Fourth Amendment – and, to the extent that the charges are retaliatory, possibly the First Amendment. And Plaintiff does identify these general legal principles in responding to Blankenship's assertion of qualified immunity on summary judgment. *See* Dkt. No. 295-1 at 13-27.

But, as to each principle, Plaintiff neither identifies a case or body of relevant case law in which a public official under circumstances similar to those here was found to have violated the Constitution. Nor does Plaintiff carry the "sky high" burden to show that analogous case law is not necessary because this case presents "'extreme circumstances' where the constitutional violation is 'obvious.'" *Joseph*, 981 F.3d at 338; *Cope*, 2021 WL 2767581, at *4.

Plaintiff also identifies legal principles applicable to his constitutional conspiracy claim. *See* Dkt. No. 295-1 at 27-28. But an overarching principle applicable to all conspiracy claims under Section 1983 is that such claims require an underlying constitutional violation. So whether Plaintiff's constitutional conspiracy claim against Blankenship is clearly established turns on the clearly established nature of the underlying constitutional violation (or violations). *Cf. Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("As for his § 1983 conspiracy claim, we explained in our 1990 case *Pfannstiel* that such claims are unique. The plaintiff must not only allege

- 14 -

facts that 'establish (1) the existence of a conspiracy involving state action,' but also '(2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.' No deprivation, no § 1983 conspiracy." (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992))); *Brinkmann v. Johnston*, 793 F.2d 111, 112-13 (5th Cir. 1986) (per curiam) ("In *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982), we held that 'mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C. § 1983."). And, again, Plaintiff has not carried his burden as to the clearly established prong under either approach.

Against this backdrop, the motion for summary judgment may be decided – in favor of Blankenship – on qualified immunity's second prong. *See, e.g.*, *Batyukova*, 994 F.3d at 722-26 ("An officer is entitled to qualified immunity if the officer's conduct either did not violate a federal right of the plaintiff or that right was not clearly established at the time of the relevant events. [A court] can base a decision to allow the immunity on either part of the analysis alone." (citations omitted)); *see also Joseph*, 981 F.3d at 347 (Oldham, J., concurring in the judgment) (noting that plaintiffs' "fail[ing] to identify any case to support their constitutional claims … militates in favor of avoiding those claims rather than adjudicating them" because "it makes sense to skip the constitutional merits where 'the briefing of constitutional questions is woefully inadequate'" (cleaned up; quoting *Pearson*, 555 U.S. at 239)).

Plaintiff's version of Blankenship's particular conduct is that his investigation

did not yield probable cause for Plaintiff's arrest. And, more particularly, Plaintiff contends, at least in part, that Blankenship acted unreasonably because the probable cause determination was based on a statement that Plaintiff made to federal investigators after his arrest. But, instead of citing authority in this particular context, Plaintiff asserts that he "has proven a constitutional violation," so the remaining

> inquiry is: *at the time of arrest*, "whether a reasonable officer could have concluded that there was probable cause to arrest [Plaintiff] for [False Report to] a Peace Officer." *Eisenbach v. Zatzkin*, [728 F. App'x 307 (5th Cir. 2018) (per curiam).] However, testimony from Blankenship and [Jacob] Aguilar[, a federal agent,] have created an issue of fact for the trier of fact and, in fact prove, Plaintiff was already arrested and was in criminal custody by the time Plaintiff was interviewed/interrogated by the federal investigators, and therefore Blankenship arrested Plaintiff *prior to* the time the alleged statement was made to federal investigators. Stated differently, Blankenship did not discover the alleged false statement made to federal investigators until after the arrest.

Dkt. No. 295-1 at 14 (citing *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) ("Kalina did not discover Flores's age or the presence of alcoholic beverages until after the arrest. He therefore did not have probable cause to arrest her for either a curfew violation or underage drinking at the relevant time.")).

First, this response as to reasonableness – "The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus merged into one issue for purposes of the qualified immunity analysis." *Ramirez*, 2021 WL 2637199, at *2 – which is, in essence, to define the right broadly, to perceive a question of fact, and to urge that summary judgment on qualified immunity be denied on that basis – invites the Court to resolve the defense

- 16 -

in a manner that the Supreme Court has explicitly instructed lower federal courts to avoid. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) ("Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness.").

And, to determine whether there has been "a violation of clearly established law," *Joseph*, 981 F.3d at 330, while the Court must accept Plaintiff's well-supported version of the disputed facts and draw reasonable inferences in the light most favorable to him, the Court need not do so insofar as his "version 'is blatantly contradicted by the record, so that no reasonable jury could believe it,'" *id.* at 325.

Here, for example, Plaintiff's own evidence reflects that Blankenship's probable cause determination was based on more than Plaintiff's statement to federal investigators, *see, e.g.*, Dkt. No. 296 at 14-19 (an excerpt of Blankenship's testimony at the criminal trial), and Plaintiff's own allegations contradict the version of events set out in his framing of the clearly established right, *see* Dkt. No. 156 at 39, ¶ 94 ("Immediately following Plaintiff's interview by the DHS agents, Plaintiff was charged with making a False Report to a Peace Officer/Federal Special Investigator …. Since Plaintiff was already housed in the jail as an ICE detainee, Plaintiff were summoned to booking to be criminally processed (i.e, fingerprinting, mug shot, etc.) for the charged offense of making a false report.").

Turning next to the single unpublished Fifth Circuit panel decision that

Plaintiff cites, "[a]lthough we know the Supreme Court's decisions can clearly establish the law, the Supreme Court has never held that [a Court of Appeals's] decision[] can do the same." *Nerio*, 974 F.3d at 576 n.2 (citing *Wesby*, 138 S. Ct. at 591 n.8 ("We have not yet decided what precedents – other than our own – qualify as controlling authority for purposes of qualified immunity.")).

But, even if such a decision may, although *Eisenbach* affirmed the district court's granting qualified immunity to a police officer as to a plaintiff's First and Fourth Amendment claims based on his contention that he was arrested without probable cause, this decision from 2018 – the underlying facts of which are not similar to the facts here – does not help Plaintiff to show that, in November and December 2015, the right at issue here was clearly established. *See Eisenbach*, 728 F. App'x at 308 ("This lawsuit resulted from a confrontation between Theodore Eisenbach and Mark Zatzkin, a police officer, at the apartment complex where they both lived. That encounter ended with Eisenbach's arrest for Interference with Public Duties under section 38.15 of the Texas Penal Code. The charges were ultimately dismissed, and Eisenbach filed suit."); *see also Roque*, 993 F.3d at 335 ("[C]learly established law 'should not be defined "at a high level of generality"'" and thus, absent the rare obvious constitutional violation, "must be 'particularized' to the facts of the case." (citations omitted)).

And, focusing on Blankenship's alleged violations, this case does not present "'extreme circumstances' where the constitutional violation is 'obvious.'" For example, as noted in Plaintiff's own authority, a mistaken but reasonable conclusion as to

probable cause will not negate qualified immunity:

> "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty*, 391 F.3d at 655-56 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). Even if the officer's conclusion was mistaken, he is still entitled to qualified immunity so long as the conclusion was reasonable. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

*Eisenbach*, 728 F. App'x at 310 (citation modified).

And even the facts as viewed most favorable to Plaintiff that are not blatantly contradicted by the record do not reflect that Blankenship's conclusion as to probable cause was so unreasonable that it amounted to an obvious constitutional violation, that is, "the unlawfulness of [Blankenship's] conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 138 S. Ct. at 590 (citing *Brosseau*, 543 U.S. at 199).

In *Joseph*, the Fifth Circuit panel set out examples of an obvious case:

> The standard for obviousness is sky high, and this case does not meet it. We have nothing approaching the clarity we have perceived in other obvious cases. For example, we found that it was obviously unconstitutional for an officer to shoot – without warning, despite an opportunity to warn – a suspect who was pointing a gun to his own head and did not know the officer was there. We explained that it was an obvious case because *Tennessee v. Garner* prohibits the use of deadly force without an immediate threat and without a warning when one is feasible.
>
> In another case, we found that an officer obviously did not have reasonable suspicion to detain a man based on the following: The man briefly looked around a car in a well-lit parking lot, turned to get into another car, noticed the officer, got into that other car, and began to drive. The man exhibited no headlong flight or evasive behavior, and the officer had no prior tip or other information providing a reason to suspect the man of criminal activity.

981 F.3d at 337-38 (footnotes omitted).[2]

So, because Blankenship's alleged conduct does not come close to these examples of obviousness, Plaintiff's burden as to the clearly established prong of qualified immunity was to show that "a right is clearly established as to the specific facts of [this] case." *Nerio*, 974 F.3d at 575; *see Cunningham*, 983 F.3d at 193 ("The district court's reliance on broad pronouncements from [prior decisions] evinces a methodological error: It defined clearly established law too generally for any controlling relevance in this case. Courts must [instead] 'frame the constitutional question with specificity and granularity.'" And "'[t]he dispositive question' … is whether 'the violative nature of particular conduct is clearly established.' The answer here is no." (quoting *Morrow*, 917 F.3d at 874-75, then *Mullenix*, 577 U.S. at 12)).

Plaintiff has not carried this burden – at all – where, like *Eisenbach*, the cases that he cites for the remaining, related Fourth Amendment causes of action merely stand for "general statements of legal principle untethered to analogous or near-analogous facts." *Vincent*, 805 F.3d at 547. *See* Dkt. No. 295-1 at 18-28. Plaintiff has therefore failed "[t]o rebut [Blankenship's] qualified immunity defense." *Cloud*, 993

---

[2] *See also Cope*, 2021 WL 2767581, at *4 ("Supreme Court cases have been repeated and consistent on this high standard at the second prong. For example, in *Mullenix*, despite indications that the officer was told to stand down and he nonetheless shot from a bridge at a moving car on the street, the Court concluded qualified immunity was appropriate. Similarly, in *Kisela v. Hughes*, the Court determined that a police officer was entitled to qualified immunity after he repeatedly shot a woman who, although holding a kitchen knife, was apparently calm and was separated from the officer by a chain-link fence with a locked gate." (cleaned up; further citing *Brosseau*, "ruling that a police officer did not violate a clearly established right when she shot a fleeing suspect in the back").

F.3d at 383.

And the Court should grant the motion for summary judgment on qualified immunity, dismissing the remaining claims against Blankenship with prejudice.

> II. **The Court should grant the motion for reconsideration only insofar as the Court should reconsider its prior dismissals based on the FTCA's judgment bar and instead now dismiss the claims against the federal agents with prejudice because Plaintiff has not shown that *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 <u>(1971), should be extended to the context of this case.</u>**

Requesting reconsideration under Rule 54(b), Plaintiff contends, in sum, that (1) considering *Roe v. United States*, justice requires that the Court revisit its dismissal of his claims against Defendants Jacob Aguilar and Ivan Alvarado through the application of the FTCA's judgment bar, 28 U.S.C. § 2676; (2) considering *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny, justices require that the Court revisit its dismissal of his claims against Defendant Phillip Roden; and (3) considering *Heck* and its progeny and *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), justice requires that the Court revisit its dismissal of certain claims against Blankenship.

## A.    Aguilar and Alvarado

Aguilar and Alvarado agree with Plaintiff that, following the Fifth Circuit's decision in *Roe v. United States*, "there no longer is any final judgment in that case such that the FTCA's judgment bar would apply." Dkt. No. 307 at 7. They continue:

> But even so, the claims against Aguilar and Alvarado remain subject to dismissal because they are not cognizable under *Bivens* and the federal agents are entitled to qualified immunity, defenses raised and articulated in the federal agents' initial motion to dismiss. The Court determined that these additional grounds for dismissal were moot and pretermitted any consideration of them when it found that the FTCA

> judgment bar applied, but now that the judgment in [*Roe v. United States*] has been reversed, the issues of whether any *Bivens* claim is cognizable and of qualified immunity for Aguilar and Alvarado should be considered and a dismissal ordered on these grounds.

*Id.* (citations omitted); *see also* Dkt. No. 303 (briefing ord. on mot. for reconsideration) at 4 ("[C]oncerning the claims against Aguilar and Alvarado, both federal agents, the parties should address whether, even if some of the claims against these defendants are not now subject to the FTCA's judgment bar, those claims may be brought under *Bivens* …, an issue that the parties have previously briefed." (citations omitted)).

Because "[t]he Supreme Court has stated that 'the *Bivens* question' is 'antecedent' to the question of qualified immunity," *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021) (per curiam) (citing *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (*Hernandez I*)), the undersigned will first address whether the claims against Aguilar and Alvarado should be dismissed because Plaintiff lacks an implied damages remedy under the Constitution itself (that is, a *Bivens* claim) against these defendants. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (implying that the court may consider the *Bivens* question prior to determining whether a plaintiff has otherwise stated a plausible claim for relief).

And, for the following reasons, because Plaintiff has not shown that *Bivens* should be extended to the new context of this case, the Court should dismiss the claims against Aguilar and Alvarado without the need to consider whether either is also entitled to qualified immunity.

*Bivens*, unlike Section 1983, is not a Congressional statute that "entitles an injured person to money damages if a state official violates his or her constitutional

rights." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) ("Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.").

And the Supreme Court "has approved of an implied damages remedy under the Constitution itself" only three times – in *Bivens*, to enforce "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" in violation of the Fourth Amendment; in *Davis v. Passman*, 442 U.S. 228 (1979), holding "that the Fifth Amendment Due Process Clause gave [a Congressman's administrative assistant] a damages remedy for gender discrimination"; and in *Carlson v. Green*, 446 U.S. 14 (1980), holding "that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner] a damages remedy for failure to provide adequate medical treatment." *Abbasi*, 137 S. Ct. at 1854-55.

In *Abbasi*, the Supreme Court further "stressed that any extension of *Bivens* to new factual scenarios is now a "'disfavored' judicial activity."' *Maria S. ex rel. EHF v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1857 (quoting, in turn, *Iqbal*, 556 U.S. at 675)); *accord Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) ("*Bivens* was the product of an '*ancien regime*' that freely implied rights of action. That regime ended long ago. Today, *Bivens* claims generally are limited to the circumstances of the Supreme Court's trilogy of cases in this area…." (citations omitted)), *cert. denied*, ___ S. Ct. ____, 2021 WL 2044553 (May 24, 2021);

*Byrd*, 990 F.3d at 881 ("The Supreme Court has cautioned against extending *Bivens* to new contexts." (citing *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020) (*Hernandez II*); *Abbasi*, 137 S. Ct. at 1861)); *Butler v. S. Porter*, 999 F.3d 287, 293 (5th Cir. 2021) ("Indeed, in recent decades, the Supreme Court has 'consistently refused to extend *Bivens* to *any* new context.'" (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001); citation omitted)).

So, as to whether Plaintiff may assert claims against Aguilar and Alvarado for alleged constitutional violations, the Court should consider the "two part inquiry for determining whether to allow a *Bivens* cause of action: (1) whether the instant case involves a 'new context' that is distinct from prior *Bivens* cases and (2) whether any 'special factors' preclude extending *Bivens* to this 'new context.'" *Maria S.*, 912 F.3d at 784 (citation omitted); *accord Oliva*, 973 F.3d at 441-42 ("Courts confronting *Bivens* claims generally 'must ask two questions. First, do [the plaintiff's] claims fall into one of the three existing *Bivens* actions? Second, if not, should we recognize a new *Bivens* action here?'" (quoting *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019))); *Byrd*, 990 F.3d at 881 ("Only where a claim arises in a new context should courts then proceed to the second step of the inquiry, and contemplate whether there are 'any special factors that counsel hesitation about granting the extension.'" (quoting *Hernandez II*, 140 S. Ct. at 743)).

> "The proper test for determining whether a case presents a new *Bivens* context is" whether it is "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Ziglar*, 137 S. Ct. at 1859. A meaningful difference may include the Constitutional right at issue, the statutory or other legal mandate under which the officer was operating, or the presence of potential special factors that previous

> *Bivens* cases did not consider. *Id.* at 1860. "[E]ven a modest extension is still an extension." *Id.* at 1864.

*Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020).

In sum, "the proper test is whether the case differs in a meaningful way from *Bivens*, *Davis*, or *Carlson*." *Id.* (citing *Abbasi*, 137 S. Ct. at 1859; *Loumiet v. United States*, 948 F.3d 376, 381-82 (D.C. Cir. 2020)). And, in practice, "[v]irtually everything else" – any case falling outside the specifics of these three cases – "is a 'new context.'" *Oliva*, 973 F.3d at 442 (citing *Abbasi*, 137 S. Ct. at 1865); *see also Byrd*, 990 F.3d at 883 (Willett, J., specially concurring) ("The *Bivens* doctrine, if not overruled, has certainly been overtaken." And, at least in this circuit, after *Oliva*, "'[v]irtually everything' beyond the specific facts of the *Bivens* trilogy 'is a "new context"' …. And new context = no *Bivens* claim." (footnote omitted)).

Considering this controlling authority, the undersigned finds that Plaintiff's claims against Aguilar and Alvarado – based on (1) their investigative interview of Plaintiff, then being detained civilly based on his immigration status, after his sexual-assault outcry and (2) Plaintiff's subsequent arrest and prosecution by Johnson County authorities – even if asserted under the Fourth Amendment, do meaningfully differ from the *Bivens* trilogy and therefore present a new context. *See, e.g.*, *Cantú*, 933 F.3d at 422-23 ("Cantú purports to address the first question. And he thinks he's home free because his malicious-prosecution-type-claim alleges a violation of his Fourth Amendment right to be free from unlawful seizures – the same right recognized in *Bivens*. That's wrong. Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-

searches-and-seizures clause.' …. [But, w]hat if a plaintiff asserts a violation of the same clause of the same amendment in the same way? That still doesn't cut it. …. [In sum, b]y any measure, Cantú's claims are meaningfully different from the Fourth Amendment claim at issue in *Bivens*. He does not allege the officers entered his home without a warrant or violated his rights of privacy."); *cf. Nabaya v. Bureau of Prisons*, No. 3:19-cv-215-L-BN, 2020 WL 7029909, at *3 (N.D. Tex. Oct. 7, 2020) ("Simply because *Carlson* extended *Bivens* to allow an Eighth Amendment claim by a federal prisoner in that context, does not mean that Nabaya may rely on *Carlson* in this context." (citation omitted)), *rec. accepted*, 2020 WL 7027470 (N.D. Tex. Nov. 30, 2020).

So the Court must "contemplate whether there are '<u>any</u> special factors that counsel hesitation about granting the extension.'" *Byrd*, 990 F.3d at 881 (quoting *Hernandez II*, 140 S. Ct. at 743; emphasis added); *see Butler*, 999 F.3d at 294 ("Importantly, '[e]ven before *Abbasi* clarified the special factors inquiry, we agreed with our sister circuits that the only relevant threshold – that a factor counsels hesitation – is remarkably low." (citation omitted)).

This "inquiry 'concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Butler*, 999 F.3d at 294 (quoting *Abbasi*, 137 S. Ct. at 1857-58). That is, "[t]he 'most important' *Bivens* question is 'who should decide whether to provide for a damages remedy, Congress or the courts?'" *Watkins v. Three Admin. Remedy Coordinators of Bureau of Prisons*, 998 F.3d 682, 685 (5th

Cir. 2021) (quoting *Hernandez II*, 140 S. Ct. at 750). And, "'[w]hen a party seeks to assert an implied cause of action under the Constitution,' as in this case, 'separation-of-powers principles ... should be central to the analysis.'" *Byrd*, 990 F.3d at 882 (quoting *Abbasi*, 137 S. Ct. at 1857).

Here, Congress has provided a damages remedy: the FTCA, a statute that Plaintiff has already sought relief under related to the alleged actions by the federal agents also made defendants in this case. Thus, congressional intent and the separation of powers counsel against providing a judicial remedy here. *Cf. Oliva*, 973 F.3d at 444 ("Oliva cannot negate this special factor by arguing that the FTCA doesn't cover excessive-force claims. The Supreme Court has been clear that the alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would. That the FTCA might not give Oliva everything he seeks is therefore no reason to extend *Bivens*. Second, the separation of powers is itself a special factor. That is, we must consider what Congress has done and what Congress has left undone. With the FTCA, Congress waived the United States' sovereign immunity as to some claims and not others. Yet Congress did not make individual officers statutorily liable for excessive-force claims. This 'silence of Congress is relevant' to the special-factors inquiry. These special factors give us 'reason to pause' before extending *Bivens*. In such cases, the Supreme Court has consistently 'reject[ed] the request' to extend *Bivens*." (citations omitted)).

In sum, Plaintiff's allegations against Aguilar and Alvarado equal a new context, outside the *Bivens* trilogy, and several special factors counsel against

extending *Bivens* to this context.

The Court should dismiss the claims against Aguilar and Alvarado with prejudice.

### B.    Roden

Other than the claims that Plaintiff voluntarily dismissed, *see* Dkt. No. 255, the Court has dismissed with prejudice – as time barred – the claims against Defendant Phillip Roden, *see Roe*, 2020 WL 6576784, at *3-*19; *Roe*, 2020 WL 5542333.

Plaintiff now urges the Court to reconsider its dismissal of these claims (or at least some of these claims) because, Plaintiff argues, their accrual was delayed by *Heck v. Humphrey* and its progeny. *See* Dkt. No. 302 at 6-12.

To reiterate for context, the Court previously concluded that, as well pled, some claims against Blankenship accrued when Plaintiff's criminal proceedings ended in his favor. Those claims were limited to Fourth Amendment claims based on a theory of malicious prosecution. Requesting reconsideration as to the timeliness of his claims against Roden, Plaintiff now seeks to expand this holding and asserts that his "Fourteenth Amendment claims against Roden, which is inextricably intertwined with, and implicate his Fourth Amendment pretrial detention, accrue[d] when [he] was acquitted." Dkt. No. 302 at 12 (citations omitted).

Under the rule announced in *Heck*, "factual allegations [that] are necessarily inconsistent with the validity of [a] conviction" that a plaintiff fails to show has been reversed on direct appeal, expunged by executive order, or otherwise declared invalid

by a state tribunal or federal court should be dismissed. *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) (cited in *Bush v. Strain*, 513 F.3d 492, 498 n.14 (5th Cir. 2008)); *see also Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019) (per curiam) ("In *Heck*, the Supreme Court held that if a plaintiff's civil rights claim for damages challenges the validity of his criminal conviction or sentence, and the plaintiff cannot show that such conviction or sentence has been reversed, invalidated, or otherwise set aside, the claim is not cognizable under § 1983." (citing *Heck*, 512 U.S. at 486-87)).

That is, "[a] § 1983 claim which falls under the rule in *Heck* is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996) (citation omitted)).

Courts often refer to a claim subject to this rule as being *Heck* barred. But, more accurately, a claim subject to the rule in *Heck* has yet to accrue. *See Colvin v. LaBlanc*, ___ F.4th ____, No. 19-30888, 2021 WL 2562449, at *3 (5th Cir. June 23, 2021) (*Heck* "based its holding on the 'hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments,' and analyzed when and how a § 1983 cause of action accrues." (footnote omitted)); *see, e.g.*, *Cook v. City of Tyler, Tex.*, 974 F.3d 537, 538-39 (5th Cir. 2020) (per curiam) ("Plaintiff filed this § 1983 claim to recover damages suffered from a series of alleged wrongful prosecutions, convictions, and imprisonment. But because Cook's conviction has yet to be formally terminated in his favor, his causes of action concerning serious official misconduct have not yet accrued and will not begin to accrue until the Texas

Court of Criminal Appeals … vacates his conviction and the State dismisses the indictment against him." (citation and footnote omitted)).

But, for a civil claim to be subject to the rule in *Heck*, and the accrual of that claim thereby delayed, its factual allegations must be necessarily inconsistent with the validity of a conviction or sentence that has yet to be reversed, invalidated, or otherwise set aside. In other words, *Heck*'s "favorable-termination requirement" "applies whenever 'a judgment in favor of the plaintiff would necessarily imply' that his prior conviction or sentence was invalid." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (quoting *Heck*, 512 U.S. at 487); *see also Colvin*, 2021 WL 2562449, at *4 ("Pursuant to *Heck*, the primary question here is whether success on Colvin's claims would necessarily implicate the validity of his conviction or confinement.").

And not all civil claims that relate to events that could lead to a criminal judgment are subject to the rule in *Heck*. *See, e.g.*, *Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 316-17 (5th Cir. 2021) (per curiam) ("In *Bush*, we held that *Heck* did not bar a plaintiff convicted of resisting arrest from bringing an excessive-force claim arising from the same conduct where the officer's use of force allegedly continued after the plaintiff was handcuffed and had ceased resisting. [513 F.3d] at 498-500. Here, the amended complaint acknowledges that Welsh 'resisted' Salazar's and others' efforts to place him in an isolation cell. But, fairly read, the complaint alleges that Vanier's use of excessive force occurred only later – after Welsh had been subdued, shackled, and transported to the isolation cell. As in *Bush*, success on Welsh's excessive-force claim would not necessarily imply the invalidity of his assault

conviction." (citation omitted)).

More applicable to Plaintiff, the Supreme Court, in *McDonough*, extended *Heck*'s accrual rule to civil claims of fabricated evidence, reasoning that such "claims challenge the validity of the criminal proceedings against [a plaintiff] in essentially the same manner as the plaintiff in *Heck* challenged the validity of his conviction," such that there cannot be ""a complete and present cause of action,"" to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing." 139 S. Ct. at 2158 (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

By contrast, "*Wallace* held that the limitations period begins to run on a § 1983 claim alleging an unlawful arrest under the Fourth Amendment as soon as the arrestee 'becomes detained pursuant to legal process,' not when he is ultimately released." *McDonough*, 139 S. Ct. at 2159 (quoting *Wallace*, 549 U.S. at 397).

In so holding, *Wallace* clarified that

> the *Heck* rule for deferred accrual is called into play only when there exists "a conviction or sentence that has *not* been ... invalidated," that is to say, an "outstanding criminal judgment." It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn.

549 U.S. at 393.

> *Wallace* also rejected, as an extension of the rule in *Heck*,

> that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside. The impracticality of such a rule should be obvious. In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict – all this at a time when it can hardly be known

what evidence the prosecution has in its possession. And what if the plaintiff (or the court) guesses wrong, and the anticipated future conviction never occurs, because of acquittal or dismissal? Does that event (instead of the *Heck*-required setting aside of the extant conviction) trigger accrual of the cause of action? Or what if prosecution never occurs – what will the trigger be then?

We are not disposed to embrace this bizarre extension of *Heck*. If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

*Id.* at 393-94 (citations omitted).

And the Supreme Court more recently reconciled "the principles in *Heck*" with these results:

A false-arrest claim, *Wallace* explained, has a life independent of an ongoing trial or putative future conviction – it attacks the arrest only to the extent it was without legal process, even if legal process later commences. That feature made the claim analogous to common-law false imprisonment. By contrast, a claim like McDonough's centers on evidence used to secure an indictment and at a criminal trial, so it does not require "speculat[ion] about whether a prosecution will be brought." It directly challenges – and thus necessarily threatens to impugn – the prosecution itself.

*McDonough*, 139 S. Ct. at 2159 (citations omitted); *see also id.* at 2158 ("The principles and reasoning of *Heck* thus point toward a corollary result here: There is not "'a complete and present cause of action,'" *Wallace*, 549 U.S. at 388, to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing. Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, *see* 512 U.S. at 486-487, will the statute of limitations begin to run." (citations and footnote omitted)).

The application of the *Heck* principles to Plaintiff's relevant claims against Roden are controlled by *Wallace*.

In sum, Plaintiff's arguments in favor of delayed accrual invite the Court to apply a rule based on speculation – to speculate that the civil claims could be inconsistent with a possible criminal prosecution – an approach that *Wallace* expressly rejected as a "bizarre extension of *Heck*" (which rejection was not called into question by *McDonough*). *See, e.g.*, Dkt. No. 302 at 8-9 ("Here, the alleged false statement that is material to a criminal investigation – that, Plaintiff, John Roe reported to law enforcements that he was sexually assaulted by officer Roden – is an essential element of the crime of which Roe was charged. To prevail on his Fourteenth Amendment substantive due process claims, Plaintiff would have to allege and prove that Roden sexually assaulted him. Succeeding on this claim – by proving that he was sexually assaulted, and thus negate the essential elements of the offense of making a false report to a peace officer – <u>could necessarily imply the invalidity of any future conviction on the then-pending charged offense</u>." (emphasis added)); *id.* at 11-12 ("The False imprisonment rebuttal requires a showing that the officer lacked probable cause to charge Plaintiff with False Report to A Peace Officer, but Plaintiff's alleged conduct – the false statement – that formed the probable cause for his false imprisonment (i.e., that he was sexually arrest by Roden) also provided the basis for his Fourteenth Amendment claims against Roden.").

Like a claim of excessive force after an arrest or a claim for false arrest, Plaintiff's applicable claims against Roden have a life of their own. To accrue, those

claims – unlike claims subject to *Heck* and *McDonough* – did not depend on a criminal proceeding ending in Plaintiff's favor. In other words, there was a complete and present cause of action against Roden prior to the initiation of the criminal proceedings against Plaintiff.

And, if he had pursued the civil claims against Roden timely, a court could have elected to stay the civil proceeding considering a pending false arrest prosecution. But that Plaintiff elected to sue Roden after the criminal proceeding ended in no way affects when the claims against Roden accrued.

The Court should therefore deny reconsideration of its dismissal of the claims against Roden as time barred.

## C.    Blankenship

Plaintiff also requests reconsideration (or clarification) as to claims that the Court previously dismissed against Blankenship. Plaintiff first urges the Court to reconsider its dismissal of the punitive segregation claim against Blankenship. *See* Dkt. No. 302 at 13-15. Plaintiff next seeks "clarification" as to what, if any, official capacity claims against Blankenship survived dismissal as untimely. *See id.* at 15-17. And, if no official claims did, Plaintiff re-urges the viability of those claims. *See id.* at 17-20.

The Court held that, like Plaintiff's claims based on a false arrest theory, his punitive segregation claim was time barred because its accrual was not delayed by *Heck* and its progeny. *See Roe*, 2020 WL 5541222, at \*2-\*3. For the reasons previously explained by the Court and for the reasons above, a claim based on punitive

segregation – at least on the facts that Plaintiff alleges – is like a claim based on false arrest and thus also has a life of its own and does not depend on a criminal proceeding ending in a plaintiff's favor to become a complete and present cause of action. So the Court need not reconsider its previous dismissal of this claim as time barred.

Turning to the official capacity claims against Blankenship – essentially that Johnson County, as a municipality, may be held liable for Blankenship's actions, *see Roe*, 2020 WL 65767684, at *10 ("When an individual is sued is his official capacity, liability is imposed 'on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond.'" (quoting *Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015))) – the undersigned's July 31, 2020 recommendation provided:

> Plaintiff also seems to base municipal liability on actions taken by jail administrator Blankenship, *see, e.g.*, Dkt. No. 156, ¶ 86, to whom Plaintiff reported the alleged sexual assault, *see id.*, ¶¶ 61-63, and who testified that he was familiar with past sexual assaults at the jail, *see id.*, ¶ 75. To the extent that Plaintiff alleges that Blankenship was himself a policymaker, *see id.*, ¶ 86 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Brown v. Bryan Cnty.*, 219 F.3d 450 (5th Cir. 2000)), "even a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the § 1983 claim,'" *Webb v. Twn. of Saint Joseph*, 925 F.3d 209, 214-15 (5th Cir. 2019) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citing, in turn, *Pembaur*, 475 U.S. at 480, 482, 484-85); citing *Anderson v. City of McComb*, 539 F. App'x 385, 388 n.2 (5th Cir. 2013) ("When the policymakers are the violators, no further proof of municipal policy or custom is required.")).
>
> And, because the second amended complaint provides "more than speculation," *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018), alleging that Blankenship oversaw day-to-day operation of the jail and thus was "delegated authority by the Sheriff respecting all law enforcement and custodial activities at the county jail," Dkt. No. 156, ¶ 86, it does not matter for purposes of a motion to dismiss whether

> Blankenship actually possessed final policymaking authority, *see Groden v. City of Dallas*, 826 F.3d 280, 283-84 (5th Cir. 2016) ("[T]he specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable.").
>
> But the policymaking allegations as to Blankenship and, more fundamentally, <u>all</u> the factual assertions Plaintiff makes in support of municipal liability are aimed at the claims that should be dismissed as time barred. He alleges no facts to show that, as to the claims that are timely, there is a basis to tag a municipal authority with liability. *See* Dkt. No. 156, ¶¶ 106-33, 139-53.
>
> For these reasons, the Court should dismiss with prejudice all or the municipal liability aspects of the following counts: Counts IX, XII, XIII, XIV, XVII, XX, XXI, XXII, XXIII, XXIV, XXV, XXVI, XXVII, and XXVIII.

*Roe*, 2020 WL 65767684, at *16 (citations modified and footnote omitted).

But this statement of the law – in particular paragraph 2 – is not complete.

And it should be clarified as explained below.

Citing the SAC, Plaintiff's motion for reconsideration provides:

> Blankenship has testified that, since the year 2013, he has been assigned by Johnson County Sheriff Bob Alford to oversee the day-to-day operation of the Johnson County jail and several other departments.
>
> ***
>
> Sheriff Alford is the official policymaker for Johnson County with respect to law enforcement and the county jail [,] Blankenship's testimony that he has been delegated by the Johnson County Sheriff's Office to oversee the day-to-day operation of the county jail (see, ¶ 70, supra) endowed him final policymaking authority with respect to law enforcement activity at the JCDC, and thus makes him a *de facto* policymaker for the county whose actions may be directly imputed to the County under § 1983. Additionally, because it is undisputed that Blankenship was delegated authority by the Sheriff respecting all law enforcement and custodial activities at the county jail, in this situation, Blankenship was the relevant policymaker. His decision to violate Plaintiff's constitutional rights could therefore be viewed as "a final decision-maker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations.'"

Dkt. No. 302 at 17-18 (citations omitted).

As Plaintiff correctly states, "[u]nder Texas law, sheriffs are 'final policymakers' in the area of law enforcement for the purposes of holding a county liable under § 1983." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citing *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1013 (5th Cir. 2003)).

But "[t]here is a fundamental difference between decision makers and policymakers," such that "'[d]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function.'" *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 246 (5th Cir. 2021) (per curiam) (quoting *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008)); *see, e.g.*, *Reynolds v. City of Commerce, Tex.*, No. 3:19-cv-1577-E, 2021 WL 268819, at *3 (N.D. Tex. Jan. 27, 2021) ("Under Texas law, the final policymaker for a city is the city council. Here, the City has empowered the Commission to, among other things, enforce ordinances related to dangerously damaged or deteriorated buildings or improvements. Although the Commission may be a final decisionmaker in administering those ordinances, the council is the final policymaker with respect to those ordinances." (citations omitted)); *see also Martinez*, 846 F. App'x at 246 ("'A "policymaker" must be one who takes the place of the governing body in a designated area of city administration.' *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)). 'City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. [T]hey are not supervised except as to the totality of their performance.' *Bennett*, 728 F.2d at 769.").

Considering this authority, Plaintiff has not plausibly alleged that Blankenship was a policymaker – one who took the place of the sheriff and thus did not answer to the sheriff with respect to the operation of the jail – such that the municipality itself may be held liable for Blankenship's alleged actions. *See, e.g.*, *Hughes v. City of Dallas, Tex.*, No. 3:18-cv-1770-B, 2020 WL 4670659, at *4 (N.D. Tex. Aug. 11, 2020) ("As illustrated in a pre-*Groden* decision from this district, in a suit against the City of Dallas, sufficient factual allegations connecting an allegedly unconstitutional policy to the City's actual policymaker, its City Council, can insulate a complaint from dismissal under Rule 12(b)(6) even if municipal liability is based on actions by the City's police chief. *See Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 950-52 (N.D. Tex. 2014). In *Flanagan*, the plaintiffs alleged 'in their amended complaint ... that Dallas City Councilman Dwaine Caraway recently confirmed that the City Council had delegated policy-making authority for police officer training to Chief Brown.' *Id.* at 951. ... Here, Hughes's amended complaint lacks similar factual allegations to show that it is plausible that Chief Brown was a final policymaker, notably under a theory that he was acting under policymaking – not decisionmaking – authority delegated to him.").

With this clarification, the Court need not reconsider its previous dismissal of the official capacity claims against Blankenship.

### Recommendation

The Court should grant Defendant David Blankenship's motion for summary judgment on qualified immunity [Dkt. No. 279], grant in part and deny in part

Plaintiff's motion for reconsideration [Dkt. No. 302], and enter judgment dismissing this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 13, 2021

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE